[Civ. No. 42608. Second Dist., Div. Two. May 10, 1974.]

ALEX MADONNA, Plaintiff and Respondent, v.
COUNTY OF SAN LUIS OBISPO et al., Defendants and Appellants.

## COUNSEL

Robert N. Tait, District Attorney, and Robert J. Schum, Deputy District Attorney, for Defendants and Appellants.

Ogle & Gallo and J. K. George for Plaintiff and Respondent.

## OPINION

**FLEMING, Acting P. J.**—The County of San Luis Obispo appeals the judgment of the superior court which, (1) set aside an assessment by the county board of equalization of property commonly known as the Madonna Inn owned and operated by respondent Alex Madonna, (2) awarded Madonna $1,000 attorneys' fees, and (3) remanded the cause to the board for further proceedings.

### FACTS

For the fiscal year 1969-1970, the Tax Assessor of the County of San Luis Obispo, acting under authority of Revenue and Taxation Code section 401, assessed the full cash value of the Madonna Inn at $4,389,816: $394,400 for land, $425,816 for personal property, and $3,569,600 for improvements (motel, restaurant, and shops).

Madonna appealed the improvements assessment to the county board of supervisors sitting as a board of equalization. In the absence of any comparable properties, the board considered two other traditional methods of valuation: replacement cost, and income capitalization. (See *De Luz Homes, Inc.* v. *County of San Diego,* 45 Cal.2d 546, 563-564 [290 P.2d 544].) On replacement cost, Madonna presented evidence that the improvements cost $2,200,000 and had depreciated in value to between $1,000,000 and $1,300,000. The assessor presented evidence that the cost of improvements less depreciation totaled $1,537,240.

On income capitalization, the assessor offered the following computation: from the gross income of the Madonna Inn for 1968 ($1,971,891), the assessor subtracted the cost of goods sold ($529,398), other expenses ($908,630), and estimated income from land ($34,711) and personal property ($53,225), to reach the amount of income attributable to improvements ($445,927); the assessor then capitalized the improvement income at a rate of 12.5 percent to reach a value for improvements of $3,569,600.

The board found in pertinent part:

"2. The income capitalization method, as applied to the Madonna Inn, is inappropriate and misleading in that enterprise income on said premises is improperly commingled and improperly included with income properly attributable solely to land and buildings.

"3. If the income approach is used, income to be processed must be the expected future income from the property to be appraised, excluding any income from businesses or enterprises carried on in the same property. Property income must be segregated from business income and only the former may be evaluated for property tax purposes.

"4. Subject property, known as the Madonna Inn, is a unique structure in the world. It was conceived, built and constantly managed over the years by applicant herein, Alex Madonna and his wife Phyllis. A portion of the income from the property is largely predicated on the personal expertise in management of Mr. and Mrs. Madonna."

The board assessed the full cash value of the improvements at $2,-500,000.

Madonna paid his taxes under protest and brought suit in superior court for a refund pursuant to Revenue and Taxation Code section 5138. The court considered the pleadings and the transcript of the hearing before the board and found no evidence to support the improvements assessment of $2,500,000. Concluding that the board had acted arbitrarily and capriciously, the court set aside the improvements assessment, awarded Madonna attorneys' fees of $1,000 pursuant to Government Code section 800, and remanded the cause to the board "for rehearing thereon and completion upon the basis of the evidence to be submitted at the hearing before it in accordance with due process of law."

## ISSUES

Appellant contends (1) substantial evidence supports the Board's improvements assessment; (2) the Board did not act "arbitrarily and capriciously" within the meaning of Government Code section 800 so as to entitle Madonna to attorneys' fees; (3) if the cause is remanded, it should be remanded to a subsequently created assessment appeals board.

## DISCUSSION

1. *Sufficiency of Evidence.* The California Constitution, article XIII, section 9, creates county boards of equalization and imposes upon them

the duty "to equalize the valuation of the taxable property in the county for the purpose of taxation." ■ A board's decision is final, and subject to review by the courts only for excess of jurisdiction, errors of law, abuse of discretion, or insufficiency of the evidence. (*Covert* v. *State Board of Equalization,* 29 Cal.2d 125, 132 [173 P.2d 545]; see *Strumsky* v. *San Diego County Employees Retirement Assn.,* 11 Cal.3d 28, 35 [112 Cal. Rptr. 805, 520 P.2d 29]; cf. Rev. & Tax. Code, § 1605.5; *Georgia-Pacific Corp.* v. *County of Butte,* 37 Cal.App.3d 461, 476 [112 Cal.Rptr. 327]; *Host International, Inc.* v. *County of San Mateo,* 35 Cal.App.3d 286, 290-291 [110 Cal.Rptr. 652].)

■ We agree with the superior court that the evidence before the board did not support an improvements assessment of $2,500,000. The board need not adhere to technical evidentiary rules (Rev. & Tax. Code, § 1609.2; *Rancho Santa Margarita* v. *San Diego Co.,* 135 Cal.App. 134, 142-143 [26 P.2d 716]), but the record must contain some "legal" evidence to support the board's decision. (*A. F. Gilmore Co.* v. *County of Los Angeles,* 186 Cal.App.2d 471, 476 [9 Cal.Rptr. 67].) The board had before it two sets of valuation data: replacement cost estimated variously at $1,000,000 to $1,537,240, and capitalized income estimated at $3,569,600. However, Madonna established that the capitalized income valuation improperly included enterprise income, and the board found that method to be "inappropriate and misleading" in the circumstances of this case. The board was not furnished any evidence from which it might determine what correction should be made in the assessor's computation of capitalized-income valuation in order to render that computation appropriate and accurate. The replacement cost estimates of $1,000,000 to $1,537,240 remained the only alternative evidence before the board on the value of the improvements. The board's valuation of $2,500,000 did not fall within any acceptable range of the cognizable evidence before it (*County of L.A.* v. *Tax Appeals Bd. No. 2,* 267 Cal.App.2d 830, 834-836 [73 Cal.Rptr. 469]), and therefore the superior court properly remanded the cause for further consideration. (*Covert* v. *State Board of Equalization,* 29 Cal.2d 125, 131 [173 P.2d 545].)

■ 2. *Attorneys' Fees.* Government Code section 800 provides that in a civil action to review an administrative determination by a public entity, the court may award to a prevailing complainant reasonable attorneys' fees not to exceed $1,500 if the administrative determination resulted from "arbitrary or capricious action or conduct by a public entity or an officer thereof in his official capacity."

The phrase "arbitrary or capricious" has no precise meaning, and the

code does not undertake to define it. However, conduct not supported by a fair or substantial reason may be categorized as arbitrary and capricious. (*Bedford Investment Co.* v. *Folb,* 79 Cal.App.2d 363, 366 [180 P.2d 361].) The courts often characterize unsubstantiated determinations as arbitrary. (See *Stewart* v. *State Personnel Board,* 250 Cal.App.2d 445, 447 [58 Cal.Rptr. 280]; *Lorimore* v. *State Personnel Board,* 232 Cal.App. 2d 183, 186 [42 Cal.Rptr. 640].)

The finding that governmental conduct is arbitrary and capricious within the meaning of Government Code section 800 is essentially one of fact (*Olson* v. *Hickman,* 25 Cal.App.3d 920, 922-923 [102 Cal.Rptr. 248]), and we cannot say that the superior court abused its discretion in making that finding here. The board shirked its responsibility to both the taxpayer and the public by acting on speculation and conjecture in determining the assessment of Madonna's property.

■ 3. *Remand.* The California Constitution, article XIII, section 9 provides that the "boards of supervisors of the several counties of the State shall constitute boards of equalization for their respective counties." Section 9.5 provides that boards of supervisors may create "assessment appeals boards" which "shall constitute boards of equalization for their respective counties."

In 1969 the Board of Supervisors of San Luis Obispo County sitting as a board of equalization heard this cause. In 1970, while the superior court was reviewing the cause, the board of supervisors created an assessment appeals board for the county. In February 1973 the superior court set aside the assessment and remanded the cause for further proceedings to the board of supervisors sitting as a board of equalization.

We conclude that the superior court properly remanded the cause to the board of supervisors sitting as a board of equalization rather than to the newly created assessment appeals board. The creation of an assessment appeals board by the board of supervisors does not irrevocably divest the board of its constitutional power to act as a board of equalization. (But see, *County of Sacramento* v. *Assessment Appeals Bd. No. 2,* 32 Cal. App.3d 654, 662-663, fn. 4 [108 Cal.Rptr. 434].) A county may have more than one assessment appeals board, and while it may discontinue an assessment appeals board, discontinuance is "subject to any such board continuing to function until matters pending before it have been disposed of." (Cal. Const., art. XIII, § 9.5; Rev. & Tax. Code, § 1626.) We think the board of supervisors sitting as a board of equalization can

properly hear to a conclusion all unresolved matters that have heretofore come before it.

The judgment is affirmed.

Compton, J., and Beach, J., concurred.