[Civ. No. 2060. Fifth Dist. Mar. 18, 1975.]

MIDSTATE THEATRES, INC., et al., Plaintiffs and Appellants, v. BOARD OF SUPERVISORS OF STANISLAUS COUNTY, Defendant and Respondent.

**COUNSEL**

Ehrman & Flavin and Sean Flavin for Plaintiffs and Appellants.

T. W. Martz, County Counsel, Jonathan H. Rowell, John F. Christensen and Harry P. Drabkin, Deputy County Counsel, for Defendant and Respondent.

**OPINION**

**BROWN (G. A.), P. J.**—On August 23, 1972, appellants, Midstate Theatres, Inc., a corporation, and Redwood Theatres, Incorporated, a corporation, (hereinafter "applicants") timely filed with the Board of Supervisors of Stanislaus County sitting as a county board of equaliza-

tion (hereinafter "the board") applications for reduction in their 1972-1973 property tax assessments on their land, hotel, theater and parking garage located in the City of Modesto. The applications were made on printed forms provided by the county, and though amended on August 30 and September 25, 1972, the applications as amended were rejected by the county counsel as invalid because they did not show the "facts relied upon to support the claim that the board should order a change" in the assessment of value of the subject property.

Applicants petitioned the superior court for a writ of mandate directing the board to conduct a hearing on the applications. The superior court ordered that the applications be set for hearing on condition that at least 20 days before the hearing the applicants furnish to the board complete appraisal reports by all appraisers applicants intended to call as witnesses. The trial court also found that the board's action was not arbitrary or capricious within the meaning of Government Code section 800 and denied attorney's fees.

Applicants appeal from the judgment, contending that (1) the trial court acted beyond its legal authority in conditioning applicants' right to a hearing on furnishing the appraisal reports at least 20 days prior to the hearing; and (2) the applications for reduction in assessments were sufficient as a matter of law; and (3) the refusal to accept the applications was arbitrary and capricious as a matter of law, entitling applicants to attorney's fees pursuant to Government Code section 800.

CONDITIONING APPROVAL OF THE APPLICATION
ON APPLICANTS' FURNISHING APPRAISAL REPORTS

■ The trial court avoided passing on the sufficiency of the applications by conditioning approval thereof upon applicants' furnishing appraisal reports to the board at least 20 days prior to the hearing.[1] For the reasons to be stated, however, we hold the condition exceeded the court's authority and is void.

Revenue and Taxation Code section 1608.7 at the times relevant herein provided that at any time prior to 20 days before the hearing an applicant may initiate an exchange of information with the assessor by submitting data as specified in the section, and at least 10 days prior to the hearing the assessor must reciprocate ·by furnishing the applicant

---

[1]The court concluded: "Petitioners' request for specific findings on the issues of the validity of the applications is not necessary and has been denied."

with his data. Under section 1608.7 as it then read, this two-way exchange could only be initiated by the taxpayer and was therefore wholly voluntary on his part. The court, by its order herein, in effect turned this around and gave the assessor the right to obtain the appraisal data from the taxpayer without any corresponding obligation on the assessor to disclose his data to the taxpayer. The order, therefore, violates section 1608.7 in two respects: it transfers the initiative from the applicant to the assessor, and it converts an exchange procedure into a one-way street going the assessor's way.[2]

Thus the applicants are entitled to a judicial determination of the sufficiency of their applications, unfettered by the condition, and the court is required to make a finding on this issue. (See Code Civ. Proc., § 632; Cal. Rules of Court, rule 232 (e); *Severance v. Knight-Counihan Co.* (1947) 29 Cal.2d 561, 576-577 [177 P.2d 4, 172 A.L.R. 1107] (findings are required upon all material issues).) The necessity for such a finding is emphasized by applicants' request to the trial court for a specific finding on the issue. (See Code Civ. Proc., § 634; *Morris v. Thogmartin* (1973) 29 Cal.App.3d 922 [105 Cal.Rptr. 919].)

## THE SUFFICIENCY OF THE APPLICATION

■ A taxpayer has a right to a hearing on his property tax assessment, and if an application for a hearing is denied for insufficient legal reason there is a denial of due process. (*Nickey v. Mississippi* (1934) 292 U.S. 393 [78 L.Ed. 1323, 54 S.Ct. 743]; *Bandini Estate Co. v. Los Angeles* (1938) 28 Cal.App.2d 224, 229-230 [82 P.2d 185].)

■ The facts relied upon to support the claim of overassessment as set forth in the original form application of August 23, 1972, the first letter amendment thereto dated August 30, 1972, and the final letter amendment of September 25, 1972, are contained in Appendix I attached.

Revenue and Taxation Code section 1607, subdivision (a), establishes the basic guideline by which to measure the sufficiency of an application for a reduction in assessment: "A reduction in an assessment on the local

---

[2]Since the trial herein and by Statutes 1973, chapter 782, section 1608.7 was amended to extend the right to the assessor to initiate an exchange of information in those cases where the assessed value of the property exceeds $25,000. (See also Cal. Admin. Code, tit. 18, § 305.1.) Even as amended, however, the section does not authorize the one-way mandatory exchange of information ordered by the trial court.

roll shall not be made unless the party affected or his agent makes and files with the county board a verified, written application *showing the facts claimed to require the reduction* and the applicant's opinion of the full cash value of the property." (Italics added.)[3]

The statutory language that the claim shall show the "facts claimed to require the reduction" does not require that the applicant follow technical rules of pleading or that he set forth evidentiary facts. In recognition of the reality that many, if not most, applicants are laymen who would be denied hearings if formalized technical rules were followed, it has been the judicial policy of this state to construe such applications liberally in favor of the applicant. It has been stated that an application is adequate and "the purpose of the statutory requirement is served if the board may know from said application 'or have some reasonable means of ascertaining' therefrom what the claim of the applicant is, to the end that such claims may be investigated by the assessing authorities prior to the hearing." (*County of Los Angeles* v. *Ransohoff* (1937) 24 Cal.App.2d 238, 241 [74 P.2d 828].)

Thus, in *County of Los Angeles* v. *Ransohoff, supra,* the court held the statement "unequal value" sufficient. In *Bandini Estate Co.* v. *Los Angeles, supra,* 28 Cal.App.2d 224, 227, the application stated merely "excessive valuation." In *Birch* v. *County of Orange* (1922) 59 Cal.App. 133, 135 [210 P. 57], the allegation was " 'unfair, unjust, and excessive as compared with other property of substantially the same character and value and similarly situated.' "

Accordingly, when measured by these established criteria, the applica-

---

[3]Implementing this section are California Administrative Code, title 18, section 305, subdivisions (c) (6) and (e), which in pertinent part state:

"No change in an assessment sought by a person affected shall be made unless the following application procedure is followed:

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(c) Form and Contents. The county shall provide free of charge forms on which applications are to be made. The application shall show:

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(6) The facts relied upon to support the claim that the board shall order a change in the assessed value or classification of the subject property. The amount of the tax or the amount of an assessed value increase shall not constitute facts sufficient to warrant a change in assessed values.

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(e) Amendments. No application may be amended after 5:00 p.m. on the last day upon which it might have been filed if the effect of the amendment is to request relief additional to or different in nature from that originally requested."

tion as amended on August 30, 1972, was patently sufficient, and as amended on September 25, 1972, contained a superfluity of information.

From the county counsel's rejection of these applications and his statements at the time, as well as from his deputies' testimony at the trial, it is readily apparent that the county has misconstrued the pleading requirement. For example, in the county counsel's reply to the first application he said: "On the other hand, if you are relying to any substantial extent on factual matter not previously furnished, we will advise that the applications may not be heard until such facts are stated." As to the amendment of August 30, 1972, he said: "We are constrained by the regulations of the Board of Equalization to advise you that the above applications do not 'show . . . the facts relied upon to support the claim that the board should order a change in the assessed value . . . of the subject property' and for that reason are invalid 'and shall not be acted upon by the board' (18 Cal. Adm. Code, Rule 305).

". . . . . . . . . . . . . . . . . . ."

"Our view of a reasonable time within which such factual showing should be made is, in view of the known availability of an appraisal which needs only updating and perhaps the addition of some material not presented before, twenty days. If you regard this as unreasonable, please advise your reasons." And finally, the deputy county counsel testified: "[A]ll, literally all the facts relied on were not stated in the application. The promise was made or the forecast was made that further facts would be relied on and likewise the reason stated in the letter was not a factual statement as you maintain, but argument. Also, the use of 'shoulds' and 'probable' and words like that which are illegal conclusions."

The same improper approach is similarly evidenced by the county counsel's attitude toward the so-called "saving clause" in the application dated September 25, 1972. In that application applicants stated that they

intended to have the property reappraised as of the lien date, 1972, and if the reappraisal revealed additional or different evidentiary bases for a reduction they reserved the right to present the evidence at the hearing and, if necessary, amend the application. The county counsel insisted that the applicants were required to furnish all such information before the hearing. We disagree. Not only are evidentiary facts not required in the application but California Administrative Code, title 18, section 305, subdivision (e), (see fn. 3, *ante*) inferentially permits amendment of applications after the filing date so long as the amendment does not request relief additional to or different in nature from that originally requested. The reservation of the right to present additional appraisal information at the hearing certainly comes within the concept of that rule. (See *County of Sacramento* v. *Assessment Appeals Bd. No. 2* (1973) 32 Cal.App.3d 654, 676 [108 Cal.Rptr. 434], which held that amendments which relate only to the quantum of relief embraced under the original request are permissible.)

## ATTORNEY'S FEES

■ Government Code section 800 provides that in a civil action to review an administrative determination by a public entity the court may award to a prevailing complainant reasonable attorney's fees not to exceed $1,500 if the administrative determination resulted from "arbitrary or capricious action or conduct by a public entity or an officer thereof in his official capacity."

However well intended, a stubborn insistence on following an unauthorized course of action could well be found to be arbitrary and capricious. (See *Madonna* v. *County of San Luis Obispo* (1974) 39 Cal.App.3d 57, 62 [113 Cal.Rptr. 916]; *Olson* v. *Hickman* (1972) 25 Cal.App.3d 920, 922-923 [102 Cal.Rptr. 248].) In the case at bench the trial court found that the county's action was not arbitrary or capricious. The findings state in part: "Respondent's intent and purpose in refusing to accept said application is not contrary to law, and was not for the purpose of requiring petitioner to disclose appraisal data and other information contrary to law.

"      .      .      .      .      .      .      .      .      .      .      .      .      .      .

"Respondent's conduct was taken in a good faith attempt to require

the petitioners to present their applications in the form as required by law. Said conduct of the respondent was neither arbitrary nor capricious within the meaning of Government Code Section 600 [*sic*]."

A finding that governmental conduct is arbitrary and capricious is essentially one of fact. (*Madonna* v. *County of San Luis Obispo, supra,* 39 Cal.App.3d at p. 62.) In this case, in its determination that the action was not arbitrary or capricious it appears from the findings that the trial court relied primarily upon its assumption that the refusal to accept the applications was not contrary to law. In light of our determination herein to the contrary, it is appropriate that the trial court reconsider and redetermine this essentially factual question.

For the guidance of the trial court on this issue, we also point out that in our opinion the procedure followed by the county in rejecting applications for refunds was illegal and unauthorized by law. The procedures were established by the assessor, county counsel and the clerk of the board without the advice or consent of the board itself. Under these informal arrangements, all applications are sent to the assessor, rather than to the board, for review as to sufficiency. The assessor, the taxpayers' adversary, then makes the determination as to sufficiency and directs the clerk of the board to reject the application if he, the assessor, deems the application insufficient. Only if the assessor is in doubt does he consult with the county counsel, who serves as legal adviser to both the assessor and the board. These procedures are in conflict with the constitutional duty of the board of supervisors to act as a board of equalization and to equalize the valuations of taxable property (Cal. Const., art. XIII, § 9), the assessor and county counsel having usurped the board's function of passing on the sufficiency of the applications. In *County of Sacramento* v. *Assessment Appeals Bd. No. 2, supra,* 32 Cal.App.3d at page 663, the court said: "Any quasi-judicial body, such as the assessment appeals board, has the right to pass upon its own jurisdiction in the first instance. (*United States* v. *Superior Court* (1941) 19 Cal.2d 189, 194-195 [120 P.2d 26].) It is not to be denied by directions given by the county counsel to its clerk not to calendar a request for equalization, or a ukase that it has no jurisdiction to proceed."

The holding herein, of course, is not to be construed to prevent the assessor and county counsel from making recommendations to the board or advising applicants as to what their recommendations may be.

The judgment is reversed with directions to the trial court to vacate its findings of fact and conclusions of law and judgment entered thereon, to reconsider and redetermine the issue of attorney's fees, to enter new findings and conclusions and judgment in accordance with the views expressed herein, and to issue a writ of mandate directing the board to accept applicants' applications for reduction of assessments as amended and conduct a hearing thereon.

Gargano, J., and Thompson, J.,* concurred.

## APPENDIX I

FACTS STATED IN ORIGINAL APPLICATION DATED AUGUST 23, 1972.

"1.   Economic return.

"2.   Prospective reconstruction and remodeling requirements of the city.

"3.   Sales of similar properties.

"The above have been and/or will be reviewed and analyzed by professional appraisers."

FACTS STATED IN AMENDMENT DATED AUGUST 30, 1972.

"1.   Failure of the assessor to make proper allowance for depreciation, obsolescence, and cost of repairs.

"2.   Reliance by the assessor on sales of property that are not comparable within the criteria of Revenue and Taxation Code Section 402.5.

"3.   Failure of the assessor to convert noncash sale prices of alleged comparable sales to their cash equivalent.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

"4. Improper use by the assessor of the cost method of valuation.

"5. Over valuation of the basement areas."

FACTS STATED IN AMENDMENT DATED SEPTEMBER 25, 1972.

"1. *Failure of the Assessor to make proper allowance for depreciation, obsolesence [sic], and cost of repairs.* We are informed by the Assessor that in his appraisal he has allowed depreciation on the hotel-theatre building of 79%. The Assessor further advises that he has taken into consideration the cost of repairs and improvements required by the Fire Prevention Code and the Building Department but he is unable to state any specific amount by which he has reduced his valuation as a result of these requirements. The taxpayer believes that the Assessor's valuation of the improvements should be reduced by approximately $105,000 to allow for the cost of compliance, for reasons which were detailed in testimony and other evidence presented before the Board at the hearing on the 1971 assessment. The taxpayer intends to present additional evidence on this issue at the hearing.

"2. *Reliance by the Assessor on sales of property that are not comparable within the criteria of Revenue and Taxation Code Section 402.5.* The Assessor has advised us that the market data relied upon in arriving at the valuations appearing on the 1972 roll is the same market data employed by the Assessor in arriving at his valuation for the 1971 roll, as detailed in the reports from the Assessor to the Board of Supervisors relating to the 1971 assessments, plus one additional sale, which was the sale from Kern to Crocker National Bank by deed dated May 31, 1972 and recorded August 4, 1972, covering lots 23, 24, 25 and 26, in block 69 of the City of Modesto. These sales are not comparable within the above criteria for reasons set forth in the testimony and other evidence presented by the taxpayer at the 1971 assessment hearing, in one or more of the following respects: remoteness of time, location and character of property, nature of improvements thereon, relationship between buyer and seller, special circumstances affecting buyer or seller, abnormal financing terms.

"3. *Failure of the Assessor to convert noncash sale prices of alleged comparable sales to their cash equivalent.* The sales referred to are those relied upon by the Assessor in arriving at his valuations for the 1972 roll as hereinabove described. Contrary to the provisions of State Board of Equalization Rule 4, the Assessor used the gross sales price in his valuations, without making the required conversion to cash equivalent.

"4. *Improper use by the Assessor of the cost method of valuation.* The Assessor has stated that in arriving at the valuation of the improvements he has used, among other methods, the replacement cost, less depreciation, method of valuation. For reasons set forth in the testimony and other evidence presented by the taxpayer at the 1971 assessment hearings, the taxpayer believes that such use of the cost method is contrary to both State Board of Equalization Rule 6 and good appraisal practice and resulted in an over valuation of the improvements of approximately $100,000. The taxpayer's position is that any use of the cost method in improvements of this age is improper.

"5. *Over valuation of the basement area.* The taxpayer's contentions with respect to this item are set forth in the testimony and evidence presented at the 1971 assessment hearings. Specifically, the objection was and is that in comparing the subject property with alleged comparable property, the Assessor has included the square footage of unused basement space in the subject property, but has excluded equivalent space in the alleged comparable property, resulting in an over valuation of the subject property in the amount of approximately $65,000."