[Civ. No. 50574. Second Dist., Div. Three. Nov. 23, 1977.]

A.B.C. FEDERATION OF TEACHERS, AMERICAN FEDERATION
OF TEACHERS, LOCAL 2317, AFL-CIO et al.,
Plaintiffs and Respondents, v.
A.B.C. UNIFIED SCHOOL DISTRICT et al.,
Defendants and Appellants.

334

## COUNSEL

John H. Larson, County Counsel, and Donovan M. Main, Deputy County Counsel, for Defendants and Appellants.

Levy, Koszdin, Goldschmid & Sroloff and Henry R. Fenton, for Plaintiffs and Respondents.

## OPINION

**POTTER, Acting P. J.**—This is an appeal by the A.B.C. Unified School District, the Governing Board of A.B.C. Unified School District, and Charles W. L. Hutchison, superintendent of the A.B.C. Unified School District (hereinafter collectively referred to as District) from a judgment of the superior court granting a writ of mandate in favor of petitioners A.B.C. Federation of Teachers, American Federation of Teachers, Local No. 2317, AFL-CIO; Patricia Alviso, Christine Colton, James England, Carol Large, Metha Morrison and Donald Teague (hereinafter collectively referred to as Teachers). The judgment ordered issuance of a writ of mandate commanding the District to pay each of the above six continuation high school teachers an additional sum of $515 plus 7 percent interest for the 1975-1976 school year and awarded costs and $1,500 in attorney's fees to petitioners pursuant to Government Code section 800.

The facts (as disclosed by the pleadings and the findings of the court) showed that the above Teachers were employed during the entire 1974-1975 and 1975-1976 school years as probationary or permanent certificated employees assigned to the El Dorado Continuation High School. Each of the teachers had the same assignment and duties during the 1975-1976 school year as he or she had during the previous school year 1974-1975. Before July 1, 1973, El Dorado Continuation High School teachers, including the petitioners, were required to perform "extra service" by making home calls to absentee students. This

requirement was eliminated on or about July 1, 1973, and the extra monthly mileage allowance the teachers had been receiving for use of their cars in making such calls was discontinued.

For "several school years prior to the 1975-1976 school year, the salary schedule in effect in the . . . District . . . provided extra pay to those certificated employees employed within the El Dorado Continuation High School, in addition to the basic annual rate provided in the District's salary schedule. . . ." (Finding No. 10.) The District policy providing for this extra pay was policy No. 4142. According to the District's answer to petition for writ of mandate, "[o]n or about December 3, 1973 the governing Board of the . . . District adopted Policy No. 4142 entitled 'Pay Schedule—Extra Pay for Extra Service Assignments' which provided an annual rate of $515.00 for the El Dorado High School teachers to be added to their basic annual salary rate. The adoption of Policy No. 4142 . . . continued in effect existing policy and practice . . . ." In accordance with the District's policy provision, the Teachers received that increment of $515 during the 1974-1975 school year.

On March 18, 1975, the Teachers received letters from the District advising them of their election and employment as certificated employees for the 1975-1976 school year. The Teachers, as requested, notified the District of their acceptance of employment on or before May 9, 1975. The deadline for permanent teachers to notify their districts, according to state law, was July 1. (Ed. Code, § 13260.)[1]

On August 4, 1975, the governing board of the district amended board policy No. 4142 to delete the extra pay provided the continuation high school teachers.[2] The Teachers filed a grievance in accordance with the District grievance procedure demanding payment of the $515 stipend. On December 8, 1975, the Teachers' counsel wrote a letter

[1]All code section references, unless otherwise designated, are to the former Education Code sections in effect at the time herein relevant and prior to the reorganized Education Code, effective April 30, 1977.

[2]The board also deleted the same extra stipend paid to special education teachers within the district. On October 1, 1975, the Teachers' counsel wrote a letter of grievance on behalf of the special education teachers demanding the payment of the $515 on the ground the teachers were entitled to that stipend when board policy No. 4142, as it existed on July 1, 1975, became incorporated into their employment contract. On November 3, 1975, the board voted to reinstate the $515 stipend for the special education teachers.

explaining their position. The Teachers claimed that the extra pay for extra services assignments policy, which was not revised until August 4, 1975, was binding upon the District and entitled the continuation high school teachers to the $515 additional stipend for 1975-1976 expressly provided for in that schedule.[3]

On March 29, 1976, the Teachers received a letter from the District denying their grievance. On June 14, 1976, the Teachers filed a petition for writ of mandate in the Los Angeles Superior Court alleging that the District "arbitrarily and capriciously and in abuse of [its] discretion" refused to pay the Teachers the additional sum of $515 to which they became entitled on July 1, 1975, the beginning of the school year, pursuant to board policy No. 4142, as it then existed.

In its answer, the District claimed that mandamus was an inappropriate remedy; that the District's action was in effect a termination of an extra duty assignment, hence proper under Education Code section 13338; and was taken to avoid a violation of the uniformity requirements of Education Code section 13506. Both sides also filed declarations and points and authorities.

On August 10, 1976, the matter came to trial. The District's counsel submitted the case on the moving papers without personally appearing. Verified pleadings and declarations were received in evidence by stipulation. After the case was argued by the Teachers' counsel, Henry R. Fenton, he was sworn and testified with respect to the attorney's fees incurred by the Teachers, including the number of hours spent in preparation, the number of court appearances, the hourly fee scale, and the reasonable value of his services. The total exceeded $1,500.

After making findings of fact, the court concluded that the District had abused its discretion; that as of July 1, 1975, board policy No. 4142 became part of each teacher's employment contract for the 1975-1976

---

[3] In correspondence with the District, the Teachers' counsel pointed out that the Teachers had become entitled to re-employment during the 1975-1976 school year pursuant to provisions of the Education Code (e.g., Ed. Code, §§ 13258, 13443, 13447) and had perfected their rights to re-employment by notifying the District of their intent to remain in the service of the District prior to July 1, pursuant to Education Code section 13260; and that "it is a basic doctrine of contract law with respect to certificated employees that any rules, regulations and policies that are in effect at the time that the employees are re-elected to employment and certainly at the time that the new school year begins on July 1, become part of the employment contract. . . ."

school year; that pursuant to those employment contracts, the Teachers became entitled to the $515 increment in compensation during the 1975-1976 school year, in addition to their regular salary; that the change in the Teachers' duties on or about July 1, 1973, did not justify the District's action and "does not constitute a defense." The court concluded that mandate was an appropriate remedy and granted the petition as prayed. It found the District's action to be arbitrary and capricious and awarded the Teachers attorney's fees of $1,500. This appeal followed.

### Contentions

The District contends that (1) the $515 stipend was extra pay for extra service which could be terminated at any time; (2) mandamus was an inappropriate remedy; and (3) attorney's fees pursuant to Government Code section 800 should not have been granted. The Teachers respond that (1) they were entitled to the $515 stipend because the automatic renewal of their contracts included that compensation for the rendition of the same duties they had been performing; (2) mandamus was an appropriate remedy; and (3) the attorney's fees were properly granted. We have examined the record and conclude, for the reasons that follow, that the judgment should be affirmed.

### The Teachers Were Entitled
### To the $515 Stipend

The District contends that the $515 stipend was not part of the Teachers' salaries but was extra pay for extra duty assignments which it could terminate at any time under the authority of Education Code section 13338. ■ The Teachers respond, and we agree, that they were entitled to the extra pay as of July 1, 1975, as an integral part of their employment contracts, and the board's action in deleting that pay on August 4, 1975, constituted improper reduction of their fixed compensation after the beginning of the school year.

As our Supreme Court recently noted in *City and County of San Francisco* v. *Cooper,* 13 Cal.3d 898, 930, fn. 18 [120 Cal.Rptr. 707, 534 P.2d 403]: ". . . Past cases clearly indicate . . . that a school board may not lower salaries fixed by its salary schedule after the beginning of the school year. (See, e.g., *Rible* v. *Hughes* (1944) 24 Cal.2d 437, 444 [150 P.2d 455, 154 A.L.R. 137]; *Abraham* v. *Sims* (1935) 2 Cal.2d 698, 711 [34 P.2d 790, 42 P.2d 1029]; *Aebli* v. *Board of Education* (1944) 62

Cal.App.2d 706, 748-751 [145 P.2d 601]; cf. Ed. Code, § 13510.) This proposition follows from the fact that such salary schedules become an integral part of each teacher's employment contract. (See, e.g., *Holbrook v. Board of Education* (1951) 37 Cal.2d 316, 331-332 [231 P.2d 853]; *Rible v. Hughes, supra,* 24 Cal.2d 437, 443.)"

This time limit within which school boards, by statutory authority, can fix the compensation to be paid to teachers[4] was expressed in *Abraham* v. *Sims,* 2 Cal.2d 698, 711 [34 P.2d 790, 42 P.2d 1029]. Our Supreme Court said in this respect: "The power of the trustees to raise or reduce the salaries of permanent teachers cannot be doubted, provided it is reasonably exercised and *no attempt is made after the beginning of any particular school year to reduce the salaries for that year. . . .*" (Italics added.)

In *Rible* v. *Hughes,* 24 Cal.2d 437 [150 P.2d 455, 154 A.L.R. 137], the court pointed out that although a school board "may exercise its discretion in adopting salary schedules fixing the compensation to be paid to permanent teachers . . . the schedule must be adopted prior to the beginning of the school year; . . ." (*Id.* at p. 444.) Since the school year, as defined by statute, "begins on the first day of July and ends on the last day of June" (Ed. Code, § 5101), the compensation must be fixed by that date.

Such a limitation follows from the contractual and legal relationship of the individual teacher and the board. As was stated in *Fry* v. *Board of Education,* 17 Cal.2d 753, 760 [112 P.2d 229]: "While it is true that the relation between the Board and a teacher is that of employer and employee, and that this relationship is created by contract, the terms of that contract are to be found in the authority granted the Board by law. (*Martin* v. *Fisher,* 108 Cal.App. 34 [291 Pac. 276].) The rules and regulations of the Board, and the resolutions of the Board fixing the status of teachers, are integral parts of that contract. The contract is contained in the statutes, the rules and regulations of the board, the resolutions appointing plaintiffs, and the resolutions of the Board."

---

[4]Education Code section 13502 provides as follows:
"The governing board of any school district shall fix and order paid the compensation of persons in public school service requiring certification qualifications employed by the board unless otherwise prescribed by law."

It is clear, therefore, that whether or not the board policy No. 4142 adopted by board resolution in December 1973 is defined as a salary schedule is not determinative. In any event, it would form an integral part of the contract so long as it was "in effect at the date of the making or renewal of a teacher's contract of employment." (*Rible* v. *Hughes, supra,* 24 Cal.2d at p. 443.) In *Rible,* the court pointed out that under the statutory provisions which were the predecessors of Education Code sections 13258 and 13502 (teacher tenure acts), "the contract of employment of a permanent teacher is automatically renewed from year to year upon the same terms unless, prior to renewal, the school board acts to change such terms. . . ." *(Ibid.)*

It is undisputed that all of the teachers had been rehired by operation of law, having perfected their right to employment by notifying the District, as requested, of their intent to accept the renewed employment. (See, e.g., Ed. Code, §§ 13258-13260, 13304, 13443, 13447.) The March 18, 1975, letter from the District notifying each teacher of "election or employment as a certificated employee of the ABC District for the 1975-1976 School Year" specifically stated that: "Section 13258 of the Education Code provides that each person so elected shall be deemed reelected from year to year and no formal contract need be issued." As of July 1, 1975, board policy No. 4142 provided a $515 annual stipend for continuation high school teachers. That provision had been an integral part of the previous contracts with these teachers who had all received the increment in the 1974-1975 school year. Since the school board did not change that provision prior to renewal of the contract, it was bound to abide by the provision of the contract then in force. Renewal of the Teachers' contracts for the 1975-1976 school year occurred as of July 1, 1975, the beginning of the school year. (Ed. Code, § 5101.)[5] Thus, the District's unilateral action in amending the board policy on August 4, 1975, could have no effect on the contractual right of the Teachers to receive that annual stipend for performance of the same duties during the year 1975-1976.

■ The District's argument that the board's action constituted merely termination of extra pay for extra duty assignments pursuant to

[5]That cut-off date was further established by other statutes. Thus, for example, under section 13260, a teacher who has received such a letter as was mailed on March 18, 1975, informing him of his election, must notify the governing board of the district of his intentions to remain, prior to July 1, or he is deemed to have declined employment and his services as an employee of the district may be terminated on June 30 of that year.

section 13338 is not persuasive.[6] That section provides: "In the event a permanent employee of a school district has tenure as a full-time employee of the district, any assignment or employment of such employee in addition to his full-time assignment may be terminated by the governing board of the district at any time."

It is clear that this provision does not authorize a board to reduce the pay for the same services. The court made a finding of fact, the evidentiary support for which is not challenged, that there was no change in duties from the previous year 1974-1975. The only change in any duties had occurred more than two years before when the extra service of personal home calls to absentees was eliminated in July 1973. The board resolution (authorizing the $515 stipend) which became a term of the contract was first passed in December 1973, several months after this change.

### Mandamus Was An
### Appropriate Remedy

■ The District contends that "[t]he trial court erred in concluding that mandate was an appropriate remedy." The contention is without merit.

It is an "established principle that mandamus may issue to compel the performance of a ministerial duty or to correct an abuse of discretion.

---

[6]At trial, the District also argued that its deletion of the stipend could be justified on the grounds that it was a legally permissible remedy to an apparent violation of the principle of uniformity mandated by Education Code section 13506. The District has not argued this on appeal. We, therefore, deem the argument abandoned. In any event, the District could not have prevailed on these grounds. Section 13506 specifically states: "This section shall not apply to . . . teachers of special day and evening high school classes, . . ." Continuation education classes and schools were specially adopted and authorized by statute, "in order to meet the special educational needs of pupils to provide: . . . a specially designed program of individualized instruction and intensive guidance services to meet the special needs of pupils with behavior or severe attendance problems." (See Ed. Code, ch. 6, art. 4, §§ 5950-5958.) Moreover, evidence was also presented of other differences in the duties of special education teachers such as making home telephone calls to absentees and acting as counselors which might be used to support a reasonable classification.

Furthermore, a similar argument, based on grounds that a change after the beginning of the school year was required to conform with the principle of uniformity, was rejected in *Aebli* v. *Board of Education,* 62 Cal.App.2d 706, 748-751 [145 P.2d 601]. The court held that once a contract is made by the board with the teacher at the beginning of the school year, the board cannot thereafter go back during such year (or subsequent years) and amend that contract through unilateral action by reducing the pay agreed to be made to the teacher.

[Fns. omitted.]" (*Glendale City Employees' Assn., Inc.* v. *City of Glendale,* 15 Cal.3d 328, 344 [124 Cal.Rptr. 513, 540 P.2d 609].) In *Glendale,* our Supreme Court said (*id.* at p. 343): "The usual remedy for failure of an employer to pay wages owing to an employee is an action for breach of contract; if that remedy is adequate, mandate will not lie. (See *Elevator Operators etc. Union* v. *Newman* (1947) 30 Cal.2d 799, 808 [186 P.2d 1] and cases there cited.) But often the payment of the wages of a *public* employee requires certain preliminary steps by public officials; in such instances, the action in contract is inadequate and mandate is the appropriate remedy. (See *Tevis* v. *City & County of San Francisco* (1954) 43 Cal.2d 190 [272 P.2d 757] (mandate to compel officials to approve payroll); *Ross* v. *Board of Education* (1912) 18 Cal.App. 222 [122 P. 967] (mandate to compel officials to approve payment); cf. *Flora Crane Service, Inc.* v. *Ross* (1964) 61 Cal.2d 199 [37 Cal.Rptr. 425, 390 P.2d 193] (mandate to compel controller to certify that funds have been appropriated).)"

And Witkin explains the principle as follows: "[I]f recovery on the claim requires the performance of some ministerial duty by the defendant, such as drawing a warrant, an ordinary civil action is an inadequate remedy. The rule is, therefore, that if the *amount* of the claim is fixed by law, and the act of drawing and paying the warrant is a *ministerial duty,* mandamus will lie to compel it." (5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 74, p. 3850.) Here, the claim was for the fixed amount of $515 and required a ministerial act as described.

Our Supreme Court pointed out in *Caminetti* v. *Board of Trustees,* 1 Cal.2d 354, 356 [34 P.2d 1021], that "[t]he propriety of the remedy of mandate against a school board to collect salary due a teacher is established by several cases. (See *Ross* v. *Board of Education,* 18 Cal.App. 222 [122 Pac. 967].)" In *Ross,* cited both in *Caminetti* and *Glendale,* the plaintiff sought to compel the board of education to approve a demand for $100, being the balance due in salary under a contract. The board contended, as the District does here, that the plaintiff should have sued for damages for breach of contract. Rejecting that argument, the court pointed out the need to compel officials to approve payment and held (18 Cal.App. at p. 225): "[T]he remedy by *mandamus* will be denied only when the party seeking relief has a plain remedy at law which is not only

speedy but adequate in the sense that in and of itself it is capable of directly affording and enforcing the relief sought; and if it be found that the remedy at law, although it could and might result in a judgment for plaintiff, is nevertheless inherently incapable of compelling the performance of the specific act which forms the subject matter of an application in *mandamus*, it cannot be said that the remedy at law is equally convenient, beneficial and effective to the extent that it will supersede the remedy by *mandamus*. (*Fremont* v. *Crippen*, 10 Cal.. 211, [70 Am. Dec. 711]; *Babcock* v. *Goodrich*, 47 Cal. 488; *Raisch* v. *Board of Education*, 81 Cal. 542, [22 Pac. 890]; *Robertson* v. *Trustees*, 136 Cal. 403, [69 Pac. 88].)" (See also *Frost* v. *Trustees of Cal. State University and Colleges*, 46 Cal.App.3d 225, 228-229 [120 Cal.Rptr. 1]; *Goldsmith* v. *Board of Education*, 63 Cal.App. 141, 147 [218 P. 296].)

Moreover, the court recently said in *Coan* v. *State of California*, 11 Cal.3d 286, 291 [113 Cal.Rptr. 187, 520 P.2d 1003]: "Although a claim for payment of salary is in effect a money claim, mandamus is a proper remedy where the dispute concerns the proper construction of a statute or ordinance giving rise to the official duty to pay the salary claim."

Here, the official duty to pay the $515 salary claim arises out of the District's legal duty not to reduce teachers' salaries after the beginning of the school year, an obligation imposed through Education Code provisions, and District salary schedules and policies. In the instant case, therefore, mandamus was appropriate.

### The Award of Attorney's Fees
### Was Not An Abuse of Discretion

█ The District contends that the trial court erred in awarding the Teachers attorney's fees pursuant to Government Code section 800. We disagree.

Government Code section 800 provides that in a civil action to review an administrative determination by a public entity, the court may award reasonable attorney's fees not to exceed $1,500 to a prevailing party where the complainant "is personally obligated to pay such fees" and the administrative determination resulted from "arbitrary or capricious action or conduct by a public entity or an officer thereof in his official capacity."

The trial court found that "[b]y refusing to pay [Teachers] the additional sum of $515.00 to which they became entitled on July 1, 1975, even after it was made clear to the [District] by counsel for the [Teachers] that they were required to pay this additional sum, the [District] acted arbitrarily and capriciously and became subject to an award for reasonable attorneys fees against them pursuant to Government Code Section 800."

"A finding that governmental conduct is arbitrary and capricious is essentially one of fact" (*Midstate Theatres, Inc.* v. *Board of Supervisors*, 46 Cal.App.3d 204, 212 [119 Cal.Rptr. 894]; *Madonna* v. *County of San Luis Obispo*, 39 Cal.App.3d 57, 62 [113 Cal.Rptr. 916]) and will be sustained on appeal unless an abuse of discretion is shown. The District claims that the court's finding cannot be sustained because there is no evidence or finding that the District's action "was based upon ulterior or improper motives." No such finding is necessary. As was explained in *Madonna, id.* at pages 61-62: "The phrase 'arbitrary or capricious' has no precise meaning, and the code does not undertake to define it. However, conduct not supported by a fair or substantial reason may be categorized as arbitrary and capricious. (*Bedford Investment Co.* v. *Folb*, 79 Cal.App.2d 363, 366 [180 P.2d 361].) The courts often characterize unsubstantiated determinations as arbitrary. (See *Stewart* v. *State Personnel Board*, 250 Cal.App.2d 445, 447 [58 Cal.Rptr. 280]; *Lorimore* v. *State Personnel Board*, 232 Cal.App.2d 183, 186 [42 Cal.Rptr. 640].)"

Similarly, the court in *Midstate, supra*, 46 Cal.App.3d at page 211, pointed out that "[h]owever well intended, a stubborn insistence on following an unauthorized course of action could well be found to be arbitrary and capricious." The fact that the District's legal counsel may have advised the District that it could deny the Teachers' legitimate grievances and refuse to reinstate the $515 stipend did not preclude the trial court from finding that the District's conduct was arbitrary and capricious. Here, neither the District nor its counsel relied upon the authority of an appellate opinion which was subsequently disapproved. (See, e.g., *Gassman* v. *Governing Board*, 18 Cal.3d 137, 148-149 [133 Cal.Rptr. 1, 554 P.2d 321].)

Indeed, the law was well settled that teachers' salaries could not be reduced retroactively after the beginning of the school year, commencing

on July 1. The District conceded in its pleadings that it was without authority to make the reduction as to the special education teachers; in fact, it reinstated the stipend for them in response to their filing a grievance. Notwithstanding, the District refused to reinstate the stipend for the continuation high school teachers. There was no basis for asserting that the deletion of the extra pay could be justified as a termination of an extra assignment pursuant to Education Code section 13338. It was undisputed that the alleged extra duty assignment of home calls was terminated more than two years earlier.

The trial court made a specific finding of fact that the Teachers are "personally obligated to pay attorneys fees in an amount not less than $1,500.00 in respect of this matter, and said amount is reasonable." That finding is supported by the testimony at trial of the Teachers' attorney, Fenton, with respect to the amount of fees incurred and the fee arrangement. Fenton testified that 51 hours of attorney time had already been spent prior to that day's preparation and court appearance; that there were three court appearances in all; that the normal hourly charge of his office ranged from $40 to $50; and that the reasonable value of his work in this matter was $50 per hour. As Fenton had previously indicated to the court, even before he testified under oath, the total amount of the Teachers' obligation "even at the rate of $40 an hour [was] in excess of $1500." There was, therefore, sufficient evidence in the record to support the trial court's decision.

*Rutherford* v. *Board of Trustees,* 37 Cal.App.3d 775 [112 Cal.Rptr. 560], and *Olson* v. *Hickman,* 25 Cal.App.3d 920 [102 Cal.Rptr. 248], the cases cited by the District, do not compel a contrary conclusion. In *Rutherford,* the court, in upholding a denial of such fees, pointed out that allegations of " 'arbitrary or capricious action' " and of petitioners' personal obligation to pay attorney fees of $1,500 "should have been placed before the court in *some* fashion." (37 Cal.App.3d at p. 782.) (Italics added.) Unlike *Rutherford,* those requirements were met here by the petition alleging such arbitrary and capricious action and by the above cited testimony showing such an obligation. Furthermore, the sworn testimony of Fenton was comparable to the declaration filed by the petitioner in *Olson* v. *Hickman* which that appellate court deemed sufficient to evoke Government Code section 800 (25 Cal.App.3d at p. 924). Thus, we cannot say that the trial court abused its discretion in

awarding the Teachers attorney's fees in the amount of $1,500 pursuant to Government Code section 800.

The judgment is affirmed.

Allport, J., and Ibáñez, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.