Opinion
 

 JEFFERSON (Bernard), J.
 

 By a first amended complaint, plaintiff Grace E. Reeves sought declaratory relief concerning the constitutionality of Burbank Ordinance No. 2354. Named as defendant was the City of Burbank, a municipal corporation.
 

 Trial was by the court. The litigation arose because plaintiff Reeves owned two parcels of real property in Burbank, one on Angelino Avenue and one on Alameda Avenue. She wished to relocate the residential building on the Angelino parcel to the vacant lot on Alameda. The building on Angelino was a structure more than 15 years old. The Burbank ordinance involved herein, duly enacted by the Burbank City Council on September 26, 1972, and codified as section 7-33, subdivision (c)(3), of the Burbank Municipal Code, prohibited the relocation of any building in the City of Burbank which was over 15 years old. The ordinance was applied to plaintiff’s application for relocation and resulted in a denial by the city of plaintiff’s application.
 

 The trial court awarded plaintiff declaratory relief. The judgment declared that the ordinance was “arbitrary and capricious and without justification or rational basis or support in the record.” The trial court held the ordinance to be unconstitutional both on its face and as applied to plaintiff. The judgment directed defendant city to receive and consider any subsequent application by plaintiff and give no consideration to the fact that any prior application had been denied. The trial court also awarded plaintiff costs of suit and the statutory attorney’s fees available pursuant to Government Code section 800
 
 [1]
 
 in the amount of $1,500, the total recovery being $1,602.26.
 

 
 *774
 
 Defendant city has appealed from only that portion of the judgment awarding plaintiff attorney’s fees under Government Code section 800. It has conceded that the ordinance in question was unconstitutional. Presented here, therefore, is the relatively narrow question of what constitutes “arbitrary or capricious action or conduct by a public entity or an officer thereof,” allowing imposition of attorney’s fees pursuant to Government Code section 800.
 

 I
 

 The Factual Background
 

 We summarize the pertinent facts of this dispute. Plaintiff Reeves decided to seek city approval of her relocation plan in November 1971. She was advised by the city to apply for a conditional use permit, and did so. An inspection of the Angelino house ensued; the city’s inspector advised plaintiff that the house was well built and could be moved. However, plaintiff then learned from Watterson, the Building and Zoning Director of the City of Burbank, that he was recommending to the planning board, the administrative agency which would rule upon her request, that it deny her application. Watterson told plaintiff that relocation of existing structures was not “favored” in Burbank. Both Watterson and Burbank Zoning Administrator Mullin advised plaintiff to withdraw her application for the time being.
 

 Plaintiff testified that Mullin told her to state, as a reason for her request to withdraw her application, the need for more time to work out her relocation plan. As a consequence of this advice, in January 1972, plaintiff did withdraw her application. Thus, her application was not considered by the planning board at that time.
 

 In the months that followed, the planning board discussed relocation of buildings. By July 1972, Watterson and Mullin, the two zoning officials, were recommending to the planning board that the Burbank Municipal Code be amended to prohibit the relocation within the city of any residential building over 15 years of age.
 

 In September 1972, plaintiff reapplied for relocation approval of her Angelino house. As indicated previously herein, on September 26, 1972, the City Council of Burbank adopted the ordinance in question with an effective date of October 30, 1972.
 

 On October 9, 1972, plaintiff’s removal application was considered by the planning board. The planning board vote was deadlocked, with two
 
 *775
 
 members voting for the relocation request and two members voting against the request, with one abstention. The tie vote was considered as no action being taken on the application. Plaintiff then appealed to the city council. On October 24, 1972, the city council considered plaintiff’s application, with the same result as that which occurred in the planning board. The city council failed to take action on plaintiff’s application because two members voted against the application and two members voted in favor of the application, with one member abstaining.
 

 On October 26, 1972, two days following the “no action” result in the city council, plaintiff filed another removal application with the building department. On October 27, 1972, plaintiff wrote a letter to Watterson, informing him that she had filed a second application because a member of the Burbank City Attorney’s office informed her that a tie vote did not constitute a denial but left the application pending although she was free to reapply at any time. Plaintiff requested Watterson to notify her of the date the planning board would consider her two applications and choose whichever application the board preferred.
 

 In response to the October 27, 1972, letter, Watterson rejected the plaintiffs applications on the ground that ordinance No. 2354 would become effective October 30, 1972, and would apply to her and bar the building relocation. Using the reason that the applications could not be processed before the effective date of the new law, the applications were returned to the plaintiff. Apparently, plaintiff applied again in April 1974; that application was denied by the planning board, and, on appeal, by the city council, in June and July 1974, respectively.
 
 [2]
 
 This suit was instituted in 1975. As indicated, the trial court found for the plaintiff.
 

 II
 

 The Distinction Between Administrative Action and Legislative Action Under Government Code Section 800
 

 The record before us does not contain any findings of fact or conclusions of law.
 
 [3]
 
 What is before us is simply the judgment awarding
 
 *776
 
 plaintiff attorney’s fees. It is elementary that we are compelled to view the judgment in the light most favorable to plaintiff, who prevailed below, and to resolve all conflicts in the evidence in favor of the judgment; in addition, the prevailing standard of appellate review requires recognition of all reasonable inferences that may be drawn from the judgment.
 

 “Where findings are waived, it is implied in favor of the judgment that the court found all the facts necessary to support it. . . . [wjhere findings are not brought up it is presumed that they support the judgment.” (6 Witkin, pt. I, Cal. Procedure (2d ed. 1971) § 235, p. 4226.) These principles are particularly relevant here since “ ‘[a] finding that governmental conduct is arbitrary and capricious is essentially one of fact’ [citations] and will be sustained on appeal unless an abuse of discretion is shown.”
 
 (A.B.C. Federation of Teachers
 
 v.
 
 A.B.C. Unified Sch. Dist.
 
 (1977) 75 Cal.App.3d 332, 343 [142 Cal.Rptr. 111].).
 

 Although the phrase “arbitrary or capricious action or conduct,” as used in Government Code section 800, has no precise meaning and is not defined by that section, it has been characterized as “conduct not supported by a fair or substantial reason”
 
 (A.B.C. Federation of Teachers, supra,
 
 75 Cal.App.3d 332, 343), or “unsubstantiated determinations.”
 
 (Ibid.)
 

 Defendant city has appealed on the theory that Government Code section 800 is directed, as the statutory language indicates, to
 
 administrative
 
 determinations made in an arbitrary or capricious vein rather than to what are fundamentally
 
 legislative
 
 determinations. Defendant argues that the conduct on the part of the city of which plaintiff has complained consisted of the
 
 enactment
 
 of ordinance No. 2354 by the Burbank City Council, i.e.,
 
 legislative
 
 conduct by that body to which Government Code section 800 simply does not apply.
 

 Defendant addressed this argument to the trial court when it was resisting plaintiff’s motion for fees. As the trial court judge stated then, it is difficult to draw a meaningful distinction in every case between legislative and administrative action. Obviously a given factual situation may involve both types of action on the part of a public entity, and each situation must be assessed in the context of the particular facts involved.
 

 
 *777
 
 We agree with defendant that Government Code section 800 was not intended to impose liability upon public entities for the performance of purely
 
 legislative
 
 functions such as enacting a regulation or an ordinance, no matter how unwise such enactment turned out to be; the statute itself
 
 limits
 
 its application to
 
 administrative
 
 proceedings. (See Gov. Code, § 800,
 
 ante,
 
 fn. 1;
 
 San Leandro Police Officers Assn.
 
 v.
 
 City of San Leandro
 
 (1976) 55 Cal.App.3d 553, 558 [127 Cal.Rptr. 856].) Nor can liability be established when there is a “bona fide dispute” over the proper interpretation of and application of a law.
 
 (Von Durjais
 
 v.
 
 Board of Trustees
 
 (1978) 83 Cal.App.3d 681, 689 [148 Cal.Rptr. 192].)
 

 In addition, it has been held that a trial court did not abuse its discretion in declining to award fees under Government Code section 800 in a case in which counsel for a public entity advised the entity to take action in reliance on a judicial decision which subsequently was specifically disapproved.
 
 (Gassman
 
 v.
 
 Governing Board
 
 (1976) 18 Cal.3d 137, 149 [133 Cal.Rptr. 1, 554 P.2d 321].)
 

 The basic position of the defendant city is that plaintiff’s lawsuit was directed against the city’s
 
 enactment
 
 of ordinance No. 2354—a legislative determination—which cannot support an award of attorney’s fees pursuant to Government Code section 800. If this constituted the sole basis of plaintiff’s lawsuit, defendant city’s position would be sound as announced in
 
 San Leandro Police Officers Assn., supra.
 
 Assuming, however, that plaintiff’s lawsuit is also directed against the administrative determinations of the planning board and city council in denying plaintiff’s removal application in June and July 1974, plaintiff would still be outside the ambit of Government Code section 800 if these two administrative determinations involved just a good-faith reliance upon the validity of ordinance No. 2354. Such good-faith reliance upon the validity of a statute, as upon the meaning of a judicial decision found in
 
 Gassman,
 
 cannot be deemed arbitrary or capricious.
 

 Ill
 

 Can Administrative Reliance Upon a Statute or Ordinance Prior to Judicial Determination of Unconstitutionality Constitute Arbitrary or Capricious Conduct?
 

 Defendant city asserts the view that administrative conduct involved in simply following an existing ordinance cannot give rise to liability for
 
 *778
 
 “arbitrary and capricious” conduct, since the ordinance in question simply prohibits certain activity without allowance for the exercise of any discretion by the planning board and city council, acting as administrative agencies, to carry out the provisions of the ordinance.
 

 There can be no doubt that, in the case at bench, the Burbank Planning Board and City Council and other city officials were required to apply the prohibition in ordinance No. 2354 against relocation of any residential structure over 15 years of age and reject plaintiff’s 1974 application for removal of her house on Angelino Avenue to Alameda Avenue. But we must reject defendant city’s position that, in the case before us, adherence by Burbank’s Planning Board and City Council to the prohibition against removal of over-15-year-old residential structures automatically precludes a finding of arbitrary or capricious conduct.
 

 We hold that the conduct of defendant city in 1974, after the 1972 enactment of the prohibitory ordinance, in denying plaintiff’s application, constituted arbitrary and capricious administrative conduct. In so holding, we consider that the conduct of the city in 1974 must be viewed in light of its pre-1974 conduct with respect to plaintiff’s efforts to relocate her Angelino Avenue house.
 

 Plaintiff testified that she was persuaded to withdraw her original application, made in 1971 and prior to the time the ordinance was enacted, not for any substantial reason, but because of the general negative attitude toward her request as expressed by city officials. The record indicates that the discussions of the planning board around the problem of structure relocations were prompted, at least in part, by the knowledge that plaintiff did indeed wish to relocate the Angelino house, and would sooner or later press the matter to resolution. The enactment of the ordinance in September 1972, was intended to preclude plaintiff from proceeding further.
 

 The minutes of the Burbank Planning Board of July 24, 1972, reflect a discussion of the board in which Watterson, the city official, pointed out that a memorandum from a member of the city attorney’s staff declared that an ordinance could not be adopted that would completely prohibit the relocation of buildings. Watterson noted that the 15 years he had suggested at the last meeting “was an arbitrary period.” Nevertheless, the city council adopted ordinance No. 2354 with Watterson’s arbitrary prohibition against relocation of over-15-year-old residential structures.
 

 
 *779
 
 The hearings on plaintiff’s 1972 relocation application, held in October 1972, by the planning board and then the city council, were conducted against this background knowledge of an arbitrary prohibitory ordinance that was to become effective on October 30, 1972. The deadlock vote of the planning board and the city council, under the circumstances known to the members of these two bodies, constituted an effective denial of the application based upon factors other than a consideration on the merits.
 

 Thus, the sequence of events following the persuasion exercised by city officials in 1972 upon plaintiff to withdraw her application leads to the conclusion that such persuasion was undertaken to thwart plaintiff in the desired relocation of her property due to an unjustifiable reaction to her proposal—unsubstantiated by reference to any specific facts—a clear case of arbitrary and capricious conduct.
 

 In light of the pre-1974 actions of Burbank’s building and zoning officials, planning board and city council, the 1974 actions of these administrative officials and entities in denying plaintiff’s 1974 application cannot be considered as a good-faith reliance upon ordinance No. 2354. The planning board and city council were made aware of the arbitrary and capricious nature of the ordinance’s prohibitory features. The 1974 denial of plaintiff’s residential-structure-removal application falls within the concept of arbitrary and capricious conduct as “conduct not supported by a fair or substantial reason”
 
 (Madonna
 
 v.
 
 County of San Luis Obispo
 
 (1974) 39 Cal.App.3d 57, 62 [113 Cal.Rptr. 916]), or as “a stubborn insistence on following an unauthorized course of action”
 
 (Midstate Theatres, Inc.
 
 v.
 
 Board of Supervisors
 
 (1975) 46 Cal.App.3d 204, 211 [119 Cal.Rptr. 894]), or as “a bad faith legal dispute”
 
 (Plumbing etc. Employers Councils. Quillin
 
 (1976) 64 Cal.App.3d 215, 221 [134 Cal.Rptr. 332]).
 

 It is asserted by defendant city that the trial judge’s determination related solely to the enactment of an unconstitutional ordinance, which limits our review herein. Even assuming that to be the case, “a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.”
 
 (D’Amico
 
 v.
 
 Board of Medical Examiners
 
 (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10]; 6 Witkin, pt. I, Cal. Procedure (2d ed. 1971) § 226, p. 4215.) Regardless of what specific conduct was identified below as “arbitrary and capricious,” we have concluded that the entire record
 
 *780
 
 supports a finding that such conduct did occur, and that the trial court correctly imposed the statutory fees pursuant to Government Code section 800.
 

 IV
 

 Attorney’s Fees for Appellate Work Under Government Code Section 800
 

 Plaintiff requests that we allow additional attorney’s fees incurred by plaintiff in defending the judgment on appeal. Government Code section 800 limits total recovery to $1,500, the amount already awarded plaintiff. At issue is whether, in view of the express limitation of the monetary award contained in the statute, we have the power, by awarding fees on appeal, to in effect exceed that limitation. Plaintiff relies upon
 
 Roberts
 
 v.
 
 Brian
 
 (1973) 30 Cal.App.3d 427 [106 Cal.Rptr. 360], which upheld an award of fees for appellate representations where such were recoverable by statute. But this decision is not helpful to us as a precedent because the power to award fees considered therein was the power to award “reasonable” fees rather than an amount expressly designated in the statute itself.
 

 We have found no specific authority relating to Government Code section 800. We conclude that a reasonable construction of the statute limits recovery in any one civil action to which that section applies and of which this appeal is a part of the total sum of $1,500. Any expansion of awards pursuant to the section is a matter for consideration by the Legislature.
 

 The judgment is affirmed.
 

 Kingsley, Acting P. J., and Alarcon, J., concurred.
 

 [1]
 

 That section provides, in pertinent part, that “[i]n any civil action to appeal or review the award, finding, or other determination of any administrative proceeding under this code or under any other provision of state law, . . . where it is shown that the award, finding, or other determination of such proceeding was the result of arbitrary or capricious action or conduct by a public entity or an officer thereof in his official capacity, the complainant if he prevails in the civil action may collect reasonable attorney’s fees, but not to exceed . . . ($1,500), where he is personally obligated to pay such fees, from such public entity,. .
 

 [2]
 

 There was no testimony in the record directly establishing plaintiff’s 1974 application and the resultant denial, but there is apparently no dispute that these events took place.
 

 [3]
 

 At the conclusion of the trial, the record does not show that defendant city waived findings. We presume that either waiver occurred at some subsequent time or the findings made were not included in the record on appeal.