Filed 5/31/24 Modified and Cert. for Partial Pub. 6/21/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| BRODERICK ATKINSON,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>DEPARTMENT OF MOTOR VEHICLES et al.,<br><br>　　Defendants and Appellants.<br><br>[And 16 other cases.*] | F081372<br><br>(Super. Ct. No. BCV19-100294)<br><br>**OPINION** |

　　APPEAL from a judgment of the Superior Court of Kern County.  Eric Bradshaw, Judge.

---

\*　　*Shelton v. Department of Motor Vehicles* (No. BCV-19-100554); *Bianchieri v. Department of Motor Vehicles* (No. BCV-19-100555); *Arroyo v. Department of Motor Vehicles* (No. BCV-19-100559); *Lara v. Department of Motor Vehicles* (No. BCV-19-100561); *Gunter v. Department of Motor Vehicles* (No. BCV-19-100564); *Zermeno v. Department of Motor Vehicles* (No. BCV-19-100565); *Marquez v. Department of Motor Vehicles* (No. BCV-19-100567); *Holdren v. Department of Motor Vehicles* (No. BCV-19-100568); *Castagnoli v. Department of Motor Vehicles* (No. BCV-19-100569); *Rascon v. Department of Motor Vehicles* (No. BCV-19-100570); *Paulsen v. Department of Motor Vehicles* (No. BCV-19-100571); *Tegowski v. Department of Motor Vehicles* (No. BCV-19-100573); *Peralta v. Department of Motor Vehicles* (No. BCV-19-100574); *Bonaudi v. Department of Motor Vehicles* (No. BCV-19-100575); *Tamayo v. Department of Motor Vehicles* (No. BCV-19-100715); *Hallock v. Department of Motor Vehicles* (No. BCV-19-100716).

Xavier Becerra and Rob Bonta, Attorneys General, Chris A. Knudsen, Assistant Attorney General, Gary S. Balekjian, Lauren Sible and Brad Parr, Deputy Attorneys General for Defendants and Appellants.

Middlebrook & Associates and Richard O. Middlebrook for Plaintiffs and Respondents.

-ooOoo-

The Department of Motor Vehicles (DMV) appeals an award of attorney fees under Government Code section 800[1] to 17 drivers who prevailed on their petitions for writs of mandamus challenging the DMV's denial of requests to continue their "administrative per se" (APS) hearings. Section 800, subdivision (a) authorizes the recovery of reasonable attorney fees where a plaintiff shows a determination by a public entity or its officer was "the result of arbitrary or capricious action or conduct." The DMV raises two grounds for reversal—the drivers' writ petitions were untimely, and its denials of continuances were not arbitrary or capricious.

In the first stage of this appeal, we concluded section 11524, subdivision (c)'s 10-day time limit for seeking judicial review of a continuance "denied by an administrative law judge of the Office of Administrative Hearings" does not apply to APS proceedings because the DMV's hearing officers are not administrative law judges. Now, in the second stage of this appeal, we conclude the DMV has failed to demonstrate reversible error. The DMV has not recognized that the doctrine of implied findings applies to the superior court's written ruling and judgment and has not carried its burden of demonstrating the implied findings that the hearing officers acted in subjective bad faith were not supported by substantial evidence. The circumstantial evidence relevant to the hearing officers' state of mind, while not conclusive, is sufficient to support the implied findings.

---

[1]     Undesignated statutory references are to the Government Code.

We therefore affirm the judgment's awards of attorney fees.

## FACTS AND PROCEEDINGS

The 17 respondents in this appeal are Mark Bonaudi, Brandon Shelton, Jessica Banchieri, Samuel Gunter, Samantha Holdren, Joseph Castagnoli, Robert Tegowski, Pete Peralta, Broderick Atkinson, Yesy Zermeno, Michael Marquez, Mary Paulsen, Guillermo Tamayo, Leland Hallock, Jose Arroyo, Tom Lara, and Rodolfo Rascon (collectively, Drivers). Attorney Richard O. Middlebrook represented the Drivers in the administrative proceedings, in the superior court, and on appeal.

Each Driver was arrested for driving under the influence and, in accordance with statute, was served with an order suspending his or her driver's license. The Drivers subsequently requested APS hearings to challenge the suspension order. After the APS hearings were scheduled, each Driver requested a continuance of the hearing because their attorney was required to appear in trials or hearings scheduled in other criminal cases.

The DMV denied 15 of the Drivers' requests to continue their APS hearings and reimposed the administrative orders suspending their licenses. In Bonaudi's APS proceeding, the DMV did not rule on his request. In Atkinson's APS proceeding, the DMV set aside the order suspending his license. Attorney Middlebrook concedes that Atkinson's writ petition was improvidently filed and that the superior court erred in granting the petition.

Like the parties and the superior court, we will organize the Drivers into five groups, based on the date of their APS hearing.

January 23, 2019, was the date of Bonaudi's APS hearing. Bonaudi is the only Driver in the first group.

February 14, 2019, was the date of the APS hearings for the second group. The seven Drivers in that group are Shelton, Banchieri, Gunter, Holdren, Castagnoli, Tegowski, and Peralta.

3.

February 15, 2019, was the date of the APS hearings for the third group. The four Drivers in that group are Atkinson, Zermeno, Marquez, and Paulsen.

February 21, 2019, was the date of the APS hearings for the fourth group. The two Drivers in that group are Tamayo and Hallock.

February 22, 2019, was the date of the APS hearings for the fifth group. The three Drivers in that group are Arroyo, Lara, and Rascon.

The writ proceedings initiated by the Drivers were consolidated by the superior court with writ proceedings of over 50 other drivers whose requests for continuances had been denied and the suspension of their licenses reimposed by the DMV. The consolidated cases were tried on December 5 and 6, 2019. In January 2020, the superior court issued a written tentative decision, directed the parties to simultaneously file posttrial briefs, and stated the matter would be deemed submitted on the briefing deadline.

The court's tentative decision included a section setting forth its analysis of legal issues applicable to all the consolidated cases. Among other things, the tentative decision stated the APS hearings were not subject to the 10-day limitation period in section 11524, subdivision (c) for seeking judicial relief from a denial of an application for a continuance because a DMV hearing officer was not "an administrative law judge of the Office of Administrative Hearings" (§ 11524, subd. (c).) The tentative decision also stated the Drivers' writ petition would be granted and those 17 litigants could claim costs and attorney fees in accordance with applicable statutes and rules of court.

In February 2020, after considering the final round of briefing, the superior court issued its ruling. The court adopted the statutory interpretations announced in its tentative decision and concluded the 10-day limitation period in section 11524, subdivision (c) did not apply to the DMV hearing officers' denials of the continuances. The court granted the writ petitions of the 17 Drivers and awarded them attorney fees

4.

under section 800. The court's reasons for awarding attorney fees is described later in this opinion.

On June 4, 2020, the superior court filed a "JUDGMENT IN CONSOLIDATED MATTERS." In 22 of the cases, the petition for writ of mandate was granted, the DMV was directed to conduct a new administrative hearing, and judgment was entered in favor of the Driver. In Drivers' cases, the court awarded the attorney fees pursuant to section 800 in an amount to be determined upon filing an appropriate motion.

The DMV appealed from the judgment, challenging the award of attorney fees to the Drivers. This court assigned the DMV's appeal case No. F081372.

## DISCUSSION

I.     SECTION 11524 AND THE TIMELINESS OF THE WRIT PETITIONS

In the first stage of this appeal, when case No. F081372 was consolidated with case No. F081373 (the appeal by 51 other drivers whose writ petitions were denied), we addressed the DMV's contention that the 10-day limitation period in section 11524, subdivision (c) applied to the Drivers' writ petitions. That provision states:

> "In the event that an application for a continuance by a party is denied by an *administrative law judge* of the Office of Administrative Hearings, and the party seeks judicial review thereof, the party shall, within 10 working days of the denial, make application for appropriate judicial relief in the superior court or be barred from judicial review thereof as a matter of jurisdiction. A party applying for judicial relief from the denial shall give notice to the agency and other parties. Notwithstanding Section 1010 of the Code of Civil Procedure, the notice may be either oral at the time of the denial of application for a continuance or written at the same time application is made in court for judicial relief. This subdivision does not apply to the Department of Alcoholic Beverage Control." (§ 11524, subd. (c), italics added.)

We determined the statute has a plain meaning on the question of whether judicial review of a denial of a continuance by a DMV hearing officer must be sought within 10 working days of the denial. By its terms, that provision applies when the continuance "is

5.

denied by an administrative law judge of the Office of Administrative Hearings."
(§ 11524, subd. (c).) A DMV hearing officer does not satisfy the definition of
" '[a]dministrative law judge' " set forth in section 11500, subdivision (d) and is not
employed by the Office of Administrative Hearings. Therefore, a denial of a continuance
by a DMV hearing officer falls outside the express terms of subdivision (c) of section
11524.

The superior court correctly interpreted the statutory scheme when it determined
the Drivers' writ petitions were subject to the 30-day limitation period in Vehicle Code
section 13559, subdivision (a). Thus, the purported untimeliness of the writ petitions is
not a basis for reversing 15 of the 17 awards of attorney fees challenged in this appeal.

A full analysis of this question of statutory interpretation is not included here
because it will be set forth in our opinion in case No. F081373. Our legal conclusion
about the statute's meaning is stated here so that the DMV has flexibility in seeking
review of that interpretation in either or both cases.

II.      ATTORNEY FEES UNDER SECTION 800

A.      Basic Principles

Section 800, subdivision (a) provides in part: "In any civil action to appeal or
review the ... determination of any administrative proceeding under this code or under
any other provision of state law, ... [where] it is shown that the ... determination ... was
the result of *arbitrary or capricious* action or conduct by a public entity or an officer
thereof in his or her official capacity, the complainant if he or she prevails in the civil
action *may* collect … reasonable attorney's fees, computed at one hundred dollars ($100)
per hour, but not to exceed seven thousand five hundred dollars ($7,500) .…" (Italics
added.)

The statute's use of "may" does not make an award of attorney fees under section
800 discretionary. If a complainant prevails and makes the showing prescribed by the

statute, the complainant is entitled to collect attorney fees.  (*Plumbing etc. Employers Council v. Quillin* (1976) 64 Cal.App.3d 215, 224.)

Section 800's phrase "arbitrary or capricious action or conduct" is not defined by statute.  (See *Madonna v. County of San Luis Obispo* (1974) 39 Cal.App.3d 57, 61–62.) When attempting to ascertain the ordinary, usual meaning of a word used in a statute, it is appropriate for courts to refer to dictionary definitions of that word.  (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1121–1122.)

Black's Law Dictionary (11th ed. 2019) defines the adjective "arbitrary" to mean:

> "**1.** Depending on individual discretion; of, relating to, or involving a determination made without consideration of or regard for facts, circumstances, fixed rules, or procedures.  **2.** (Of a judicial decision) founded on prejudice or preference rather than on reason or fact. • This type of decision is often termed arbitrary and capricious."  (Italics omitted.)

Webster's Third New International Dictionary (1986) defines "arbitrary" to mean "arising from unrestrained exercise of will, caprice, or personal preference" and "based on random or convenient selection or choice rather than on reason or nature."  (*Id*. at p. 110.)  Its synonyms include despotic, tyrannical, and absolute.  (*Ibid*.)

Black's Law Dictionary, *supra*, defines the adjective "capricious" to mean:

> "**1.** (Of a person) characterized by or guided by unpredictable or impulsive behavior; likely to change one's mind suddenly or to behave in unexpected ways.  **2.** (Of a decree) contrary to the evidence or established rules of law."

Webster's Third New International Dictionary (1986) defines "capricious" to mean "marked or guided by caprice **:** given to changes of interest or attitude according to whims or passing fancies **:** not guided by steady judgment, intent, or purpose" and "lacking a standard or norm **:** marked by variation or irregularity **:** lacking predictable pattern or law."  (*Id*. at p. 333.)  Its synonyms include changeable, erratic, whimsical and inconstant.  (*Ibid*.)

Our Supreme Court has concluded section 800's phrase "arbitrary or capricious action or conduct" "encompasses conduct not supported by a fair or substantial reason

7.

[citation], a stubborn insistence on following unauthorized conduct [citation], or a bad faith legal dispute [citation]." (*Halaco Engineering Co. v. South Central Coast Regional Com.* (1986) 42 Cal.3d 52, 79 (*Halaco*); see *Hall-Villareal v. City of Fresno* (2011) 196 Cal.App.4th 24, 35.) "Encompasses" means "includes" (Webster's New World Dictionary (2d college ed. 1982) p. 460) and the terms "includes" and "including" are ordinarily words of enlargement and not limitation. (*Ornelas v. Randolph* (1993) 4 Cal.4th 1095, 1101; *People v. Aguirre* (2021) 64 Cal.App.5th 652, 661.) Based on the dictionary definitions of arbitrary and capricious and our Supreme Court's use of the word "encompasses," we conclude *Halaco*'s list of behavior constituting arbitrary or capricious conduct is not exclusive. Thus, other types of conduct may qualify as arbitrary or capricious for purposes of section 800.

Attorney fees under section 800 may not be awarded simply because the actions of the administrative entity or its official were erroneous, even if clearly erroneous. (*Jones v. Goodman* (2020) 57 Cal.App.5th 521, 540; *Reis v. Biggs Unified School Dist.* (2005) 126 Cal.App.4th 809, 823.) However, unsubstantiated determinations (such as findings based on speculation or conjecture instead of sufficient evidence) can qualify as arbitrary conduct. (*Madonna v. County of San Luis Obispo*, *supra*, 39 Cal.App.3d at p. 62.)

An example of a case in which the DMV was required to pay attorney fees under section 800 is *Santos v. Department of Motor Vehicles* (1992) 5 Cal.App.4th 537. There, the trial court awarded attorney fees and the appellate court stated it could not find the award was an abuse of discretion. (*Id*. at p. 551.) The appellate court supported its determination by stating that the DMV "suspended respondent's driver's license without sufficient proof of the facts justifying suspension, then insisted on pursuing its case against her in the face of evidence highlighting the weakness of its proof without supplying easily obtainable missing information." (*Ibid*.)

## B.  Principles Governing Appellate Review

The DMV's opening brief cites *Halaco* to support its contention that "the standard of review for this court is abuse of discretion."  In *Halaco*, *supra*, 42 Cal.3d 52, our Supreme Court stated:  "The determination of whether an action is arbitrary or capricious is essentially one of fact, within the sound discretion of the trial court."  (*Id*. at p. 79.) The DMV's briefing does not acknowledge the more specific principles of law underlying the abuse of discretion standard or other applicable principles of appellate procedure.  As explained below, the DMV, as the appellant, has the burden of demonstrating prejudicial error and these omissions undermined its efforts to carry that burden.

The Drivers' discussion of the standards of review and rules of appellate procedure is more detailed than the DMV's.  Relying on *Halaco*, the Drivers contend the determinations under section 800 are essentially findings of fact and those findings must be sustained on appeal unless an abuse of discretion is shown.  Drivers cite a case in which the court stated an award of attorney fees committed to the trial court's discretion will not be overturned in the absence of a manifest abuse of discretion, a prejudicial error of law, or necessary findings not supported by substantial evidence.  (*SSL Landlord, LLC v. County of San Mateo* (2019) 35 Cal.App.5th 262, 267.)  Drivers also refer to the presumption that the superior court's judgment is correct and the burden on the appellant to affirmatively demonstrate prejudicial error.  (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*).)

### 1.  Standards of Review

We agree with the parties that the abuse of discretion standard of review applies to a superior court's determination that the DMV's conduct was arbitrary or capricious. However, simply referring to the abuse of discretion standard is an incomplete statement of the applicable standard of review because "[t]he abuse of discretion standard is not a unified standard."  (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711.)  Instead,

9.

"the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Id.* at pp. 711–712, fns. omitted.) When applying the deferential substantial evidence standard of review, appellate courts "consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings." (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.) Stated another way, "[t]he trier of fact is the sole arbiter of all conflicts in the evidence, conflicting interpretations thereof, and conflicting inferences which reasonably may be drawn therefrom." (*Horn v. Oh* (1983) 147 Cal.App.3d 1094, 1099.)

### 2. *Appellate Procedure and Doctrine of Implied Findings*

The fundamental tenets of appellate practice include the principles that (1) appellate courts presume the superior court's judgment is correct; (2) all intendments and presumptions are indulged to support the judgment on matters as to which the record is silent; and (3) the appellant bears the burden of affirmatively demonstrating error. (*Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 58 (*Fladeboe*); see *Denham*, *supra*, 2 Cal.3d at p. 564.) California's doctrine of implied findings is a natural and logical corollary to these principles. (*Fladeboe*, *supra*, at p. 58.)

The doctrine of implied findings requires the appellate court to infer the superior court made all factual findings necessary to support the judgment, provided that the implied finding is supported by substantial evidence. (*Fladeboe*, *supra*, 150 Cal.App.4th at p. 58; see *Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 970 [under doctrine of implied findings, appellate court presumes trial court made all necessary findings supported by substantial evidence].) An example of the doctrine being applied to a claim for attorney fees under section 800 is provided by *Halaco*, *supra*, 42

Cal.3d 52. In that case, "[t]he trial court concluded, without explanation, that Halaco was not entitled to fees, but was entitled to costs." (*Id*. at p. 79.) The high court upheld the denial of attorney fees, stating: "Our review of the administrative record confirms that substantial evidence supports the trial court's implicit finding that the conduct of the Regional Board in considering Halaco's application was not wholly arbitrary and capricious." (*Ibid*.) The high court's reference to "substantial evidence" and an "implicit finding" clearly demonstrates it applied the doctrine of implied findings to the trial court's decision.

An appellant can avoid application of the doctrine by completing two procedural steps. (*Fladeboe*, *supra*, 150 Cal.App.4th at p. 58.) First, the appellant must secure a statement of decision under Code of Civil Procedure section 632. (*Fladeboe*, at p. 58.) This requirement applies in mandamus proceedings because a hearing on a petition for writ of mandamus qualifies as a "trial of a question of fact" for purposes of Code of Civil Procedure section 632. (*Ochoa v. Anaheim City School Dist.* (2017) 11 Cal.App.5th 209, 224; 1 Cal. Civil Writ Practice (Cont.Ed.Bar 4th ed. 2023) §§ 9.34–9.36, pp. 9-14 to 9-15 [statement of decision].) Second, in accordance with Code of Civil Procedure section 634, the appellant must bring any ambiguities or omissions in the statement of decision to the superior court's attention. (*Fladeboe*, at p. 58; see Cal. Rules of Court, rule 3.1590(d)–(g) [procedures for requesting, preparing and objecting to a statement of decision].)

III.    JANUARY 23, 2019 HEARING - BONAUDI

A.    Background

On November 24, 2018, Bonaudi was arrested for driving under the influence. Six days later, Attorney Middlebrook faxed the DMV's Bakersfield Driver Safety Office a letter to (1) confirm an in-person APS hearing, (2) confirm the suspension of Bonaudi's license would be stayed pending the outcome of the hearing, and (3) "request that you

agree to forward any and all discovery pertaining to the above named matter, including all statements, reports, audio and video recordings, photographs, and all other writings including any and all notes and supplemental reports." The APS hearing was scheduled for January 23, 2019, at 4:30 p.m. before Driver Safety Hearing Officer Raul Boone.

Bonaudi's request to continue his APS hearing was initially based on a conflict with Jose Bravo's second degree murder case in the Kern County Superior Court. Both sides announced ready for the Bravo trial at a December 2018 hearing and the trial was set for January 7, 2019. On January 7, 2019, the Bravo trial was rescheduled to January 16, 2019, to allow discovery related to an expert witness for the prosecution to be provided to the defense.

On January 15, 2019, Attorney Middlebrook faxed Hearing Officer Boone a request for a continuance of Bonaudi's APS hearing stating he would be in trial in the Bravo matter and would be unavailable from January 16 through 30, 2019. The Bravo trial, however, did not begin on January 16, 2019. Discovery relating to the expert had not been provided to the defense and the court, rather than excluding testimony from that expert witness, continued the trial to April 2019.

On Friday, January 18, 2019, at 4:49 p.m., Hearing Officer Boone faxed Attorney Middlebrook's office a form DS 2029 stating the request for a continuance was denied because the trial in the Bravo matter "did not go forth as stated on your Request for Continuance letter, dated January 15, 2019, therefore, I will expect you to appear for the hearing scheduled at 4:30 PM on January 23, 2019." Earlier that day, at around noon, the DMV faxed Attorney Middlebrook's office (1) a notice of hearing stating the APS hearing was scheduled for January 23, 2019, at 4:30 p.m. before Hearing Officer Boone; (2) a notice of stay of the administrative suspension; (3) a request for discovery; and (4) the officer's statement on form DS 367, the arrest report, the traffic collision report, and chemical test results.

Monday, January 21, 2019, was a holiday—Martin Luther King Day. On Tuesday, January 22, 2019, Attorney Middlebrook appeared in court for four cases set for jury trial in Kern County Superior Court. Only the Nicholas Orozco matter was expected to go forward, both sides announced ready on the Orozco matter, that matter was trailed to the next day, and the other three matters were resolved. At 2:47 p.m. that Tuesday, Attorney Middlebrook faxed Hearing Officer Boone another letter requesting a continuance of Bonaudi's APS hearing, which stated:

> "Currently there is a scheduled hearing for the abovenamed Driver on January 23, 2019, at 1:15 p.m. Unfortunately, I will be in trial on the matter of People v Nicholas Orozco case number BM912215A at the Kern County Superior Court .… This case was originally set on January 22, 2019 but was trailed until January 23, 2019 alongside People v. Sawyer Minton case number BM904716A. One is expected to go … forward. The trial is set to begin on January 23, 2019 at 8:30 a.m. and has a projected duration period of ten days as a result I will be unavailable from Wednesday January 23, 2019 through February 5, 2019.

> "Here is a recontinuation of the prior 12 years of DMV hearing scheduling in Kern County should be illustrated. For at least the last ten years, the Kern County Courts have required what are called 'time waivers' when setting matters for trial outside the statutory time. This permits the court to legally get a case out for trial within certain time parameters. Currently, the court requests a 10-court day time waiver when setting for trial. In addition to that time, the appellate courts permit an additional 10 days based on current statutory schemes and case interpretation.

> "Currently, as has been the case for at least the last ten years, we have no idea when the case will actually be sent out for trial in advance. We may be sent out immediately or we may 'trail' in trial for days or weeks. Trailing means we are ordered to return to court within the statutory time. That can be every day or we can be recalled a week later; We simply do not know and it is as much a surprise to us as anyone.

> "Both our office and the Department have understood this and we have worked diligently to have cases heard timely. We would schedule hearings knowing that trials were scheduled. If a case was sent to trial, the [DMV] ALWAYS granted continuances. If we were trailed, we would go forward with the hearing.

13.

"Although never placed in writing, we have come to the understanding that continuances will no longer be granted as outlined above despite the decade or more of policy. The reason apparently is that since a trial was scheduled far in advance and well beyond the 10-day cutoff date for continuance requests, trials are no longer good cause for continuances unless made at least 10-days in advance. Meaning, request for continuances based on an attorney's trial commitments are denied.

"This change in policy forces us to now request continuances of cases that are scheduled to go to trial despite the fact we remain unsure if they will actually be sent out for trial. Any trailing periods would then be an unknown intervening event that would require late requests as they come up.

"While the prior system has worked exquisitely, this change will require us to set hearings only during weeks that we are not otherwise committed to trials. Since the court sets trial dates months in advance, we are required to make those requests now. The basis for this change appears to be the [DMV's] 'concern' over hearings taking months and sometimes years to complete. While we certainly understand and appreciate that concern, the fault almost always has fallen squarely on the shoulders of the [DMV]. Poor staffing and unavailability of Hearing times and days that take into account Attorney required appearances in court have all lead to the backlog. Now, the [DMV] has decided to take an irrational step to stem the tide and has chosen to deny justifiable and legally mandated continuances forcing over 10 appeals out of this office alone."

The letter cited Penal Code section 1050, subdivision (a) to support the assertion that trial readiness hearings and trials in criminal cases take precedent over all civil matters or administrative proceedings. It also referred to the DMV Driver Safety Manual's examples of good cause for a continuance of an APS hearing and asserted those examples were "(1) lack of proper notice; (2) death, injury or illness of driver, attorney, or essential witness; (3) unavailability of the attorney, driver, or essential witness due to an unavoidable event which could not have been reasonably anticipated and there is no substitute of an available actor which would allow a fair hearing to proceed, (This includes a mandatory court appearance), [and] (4) significant change in the status of the case which could not have been reasonably anticipated."

14.

On the morning of January 23, 2019, Attorney Middlebrook appeared in both the Minton and Orozco matters, he announced he was ready to go to trial on the older Minton matter, and the prosecution announced it was not ready on the Minton matter because an opinion of a witness had yet to be provided. After the court denied Attorney Middlebrook's request to exclude that witness, the Minton matter was continued to March. On the Orozco matter, both sides announced ready, it was called at 1:30 p.m., and at about 3:00 p.m. the court found an available courtroom. Once there, the prosecution stated it was no longer ready and was unable to proceed.

The afternoon of January 23, 2019, at 2:18 p.m., Hearing Officer Boone faxed Attorney Middlebrook's office a form DS 2029 stating the request for a continuance of Bonaudi's APS hearing, which had been faxed earlier that day, was denied. It also stated: "Request is not timely. Counsel is expected to appear for the scheduled hearing."

Later that afternoon, when Attorney Middlebrook was no longer needed in court for the Orozco matter, he went to the DMV's office. He arrived around 3:38 p.m., made an appearance in the APS hearing for Edgar Alejandre that had been scheduled to begin at 3:30 p.m., and requested a continuance. The request to continue Alejandre's APS hearing was denied.

Shortly after Alejandre's APS hearing was concluded, Attorney Middlebrook appeared in Bonaudi's APS hearing and repeated his explanation of how the trial in the Bravo matter had been continued after the court denied his motion to exclude testimony from one of the prosecution's expert witnesses. He also described the proceedings scheduled in other criminal cases that he attended after the Bravo matter was continued. Those proceedings included a January 17, 2019 appearance in Porterville that was scheduled for 10:00 a.m. and an appearance in Ridgecrest that had been scheduled for 10:30 a.m. but he made at 1:30 p.m. As to events occurring the afternoon of January 23, 2019, Attorney Middlebrook stated that, after his office received the DMV's faxed denial of the request to continue four APS hearings scheduled for that afternoon, he made five

15.

telephone calls to Hearing Officer Boone's direct line, he left voicemail messages, and he never received a return telephone call.

Having put that background on the record, Attorney Middlebrook orally requested a continuance of Bonaudi's hearing and included the reason that he had not received any discovery in the case. Hearing Officer Boone informed him that the discovery documents had been faxed to his office around noon on Friday, January 18, 2019. y Middlebrook stated he had not seen the discovery because he was in court both that Friday and the following Tuesday, which was the next business day. Hearing Officer Boone responded to the oral request for a continuance by stating:

> "Okay. Thank you. I'm going to do two things. One, I will go on with the hearing because the first request was denied because the [Bravo] case didn't go through. The second [request] wasn't timely. But after I go through all this, I'm going to look at everything in more detail, and if I (inaudible) continue it, I will call your office and reschedule it. If I don't, I will send you the order of suspension."

Hearing Officer Boone then identified the three issues being addressed at the hearing—that is, whether the peace officer had reasonable cause to believe Bonaudi had been driving with a prohibited BAC, whether Bonaudi was lawfully arrested, and whether Bonaudi drove a motor vehicle with a prohibited BAC. Hearing Officer Boone marked four exhibits for identification—the officer's statement, the arrest investigation report, the traffic collision report, and the driving report printout with temporary license—and stated he would move all four exhibits into evidence if there was no objection. Attorney Middlebrook stated he had no ability to object because he had not seen the exhibits and did not know what they were. Hearing Officer Boone took that response as "no objection," admitted the exhibits into evidence, and asked if Attorney Middlebrook had any closing. Attorney Middlebrook stated he thought his opening covered the closing and Hearing Officer Boone ended the hearing by stating: "Okay. Then I will send you my decision or I will continue it. I will look into it. And I'll turn off the recorder."

Forty days later, when Bonaudi filed his writ petition (i.e., on March 4, 2019), neither Hearing Officer Boone nor anyone else at the DMV had notified Attorney Middlebrook or Bonaudi of continuance or a decision on whether the order of suspension would be reinstated.

B.    Superior Court's Decision to Award Attorney Fees

Bonaudi's writ petition was addressed in the superior court's February 2020 ruling as follows:  "Petition GRANTED.  A writ will issue commanding the DMV to conduct a new hearing.  Attorneys' fees are GRANTED.  Costs and attorneys' fees may be claimed in accordance with applicable statutes and rules of court.  [¶]  The denial of [Bonaudi's] request to continue the Jan. 23 APS hearing was an abuse of discretion."  The superior court explained its decision by stating:

> "[Bonaudi's] attorney appeared at the APS hearing on Jan. 23, 2019, and described his court schedule over the previous days and prior requests for continuances.  [Bonaudi's] attorney renewed his request for a continuance, and advised the hearing officer that he did not yet have the police report, DS-367 or other discovery requested from the DMV.  The hearing officer stated the discovery was faxed to [Bonaudi's] attorney's office Jan. 18, 2019, and he proceeded with the APS hearing.  The hearing officer also stated that after 'look[ing] at everything in more detail,' he would either continue the matter and call to reschedule the hearing, or send the order of suspension if the hearing was not continued.  He stated the hearing would start from 'scratch' if continued, and the hearing officer proceeded to take evidence.  Although [Bonaudi] states in his trial brief that the hearing officer issued a suspension, there appears to be no evidence of a suspension in the administrative record.  Nor does it appear the hearing was continued. It appears there was a completed hearing with no decision. According to [the DMV's] brief, the DMV has a policy of not conducting hearings once a writ petition is filed.  In any event, [Bonaudi] was entitled to receive discovery from the DMV more than five days prior to the scheduled hearing.  Good cause existed for the continuance, and a continuance should have been granted."

C. Doctrine of Implied Findings Applies

The DMV argues the grant of attorney fees should be reversed because the superior court did not find the denial of the continuance request was arbitrary or capricious and the absence of a finding, by itself, warrants reversal of the award. In response, Bonaudi contends there is nothing in the record showing the DMV requested a statement of decision under Code of Civil Procedure section 632 and, thus, this court must infer the superior court made the required findings. The DMV's opening and reply briefs do not acknowledge the existence of the doctrine of implied findings, provide no cites to the record showing the DMV took the two procedural steps necessary to avoid application of the doctrine, and provide no rationale for why the doctrine does not apply. The case cited by the DMV, *Plumbing etc. Employers Council v. Quillin, supra,* 64 Cal.App.3d 215, does not state a superior court must make an explicit finding of arbitrary or capricious conduct before awarding fees under section 800 and makes no mention of the doctrine of implied findings. In that case, the appellate court affirmed the denial of a motion for attorney fees because "the record indicates that the question of whether there was any arbitrary or capricious conduct by defendants … was not timely raised." (*Quillin, supra,* at pp. 218–219.) As an alternate rationale, the appellate court stated: "Even assuming otherwise, in the absence of a record that establishes the statutory conditions for an award of fees, we do not think the trial court here abused its discretion or erred in denying the motion." (*Id.* at p. 225.) In light of *Quillin*'s facts and procedural posture, it cannot be interpreted as establishing that the procedures for requesting a statement of decision and the related doctrine of implied findings have no application when a superior court awards attorney fees against a public entity under section 800. In short, the court in *Quillin* never decided that issue, either expressly or impliedly.

Because the DMV's appellate briefing did not address the doctrine of implied findings, this court asked the DMV's counsel during oral argument whether the doctrine applied in this case. Counsel argued that the doctrine does not apply to a governmental

entity and, as support, referred only to the principle that certain causes of action against a public entity must be pleaded with particularity. (See *Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 795.) We have located no case law or other authority accepting this novel argument. In contrast, we have located decisions by this court that, contrary to counsel's argument, applied the doctrine of implied findings in an appeal taken by a public entity. (E.g., *Ramirez v.* [*Department of Motor Vehicles*] (2023) 88 Cal.App.5th 1313, 1333–1334 [substantial evidence supported an implied finding in DMV's appeal from a judgment granting a writ of mandate]; *Hall-Villareal v. City of Fresno*, *supra,* 196 Cal.App.4th at pp. 34–35 [doctrine of implied findings applied in city's appeal from the grant of a writ of mandate].) Consequently, we conclude the pleading rule requiring certain causes of action against public entities to be alleged with particularity does not override the requirement that a statement of decision must be requested by a public entity to avoid application of the doctrine of implied findings. (See generally, 1 Cal. Civil Writ Practice, *supra*, §§ 9.34–9.36, pp. 9-14 to 9-15 [statements of decision in writ proceedings].)

In sum, the DMV's argument that the superior court was required to explicitly find the DMV's conduct was arbitrary or capricious before awarding attorney fees under section 800 lacks merit. Thus, the attorney fees awarded to Bonaudi cannot be reversed on that ground.

D.  Arbitrary or Capricious Finding Is Supported by Substantial Evidence

The DMV also contends the award of attorney fees to Bonaudi must be reversed on the ground the award was premature because the hearing officer did not make a final ruling before Bonaudi filed his writ petition. In the superior court, the DMV argued "the appropriate remedy here is to remand the matter to complete the [APS] hearing." We infer the superior court was unimpressed with this argument because the argument assumed the hearing had been continued when, in fact, the hearing officer had not ruled

19.

on the continuance. As a result, if the court had remanded the matter to the DMV, the hearing officer might have denied the continuance despite the DMV's tardy discovery response and reissued the final decision. We infer the court chose to avoid that possibility by granting Bonaudi's writ petition and entering a judgment stating: "A Writ of Mandate is issued commanding [the DMV] to promptly conduct a new administrative hearing on this matter."

The DMV has not challenged the part of the judgment directing it to conduct a new APS hearing for Bonaudi. Its appeal attacks only the part of the judgment in Bonaudi's favor that awards him attorney fees.

The DMV's opening and reply briefs do not cite any authority to support its argument that superior court prematurely awarded attorney fees to Bonaudi. (See Cal. Rules of Court, rule 8.204(a)(1)(B) [each brief must support each point by argument and, if possible, by citation to authority].) Due to the lack of citation to authority and the absence of a reasoned analysis in support of the theory, we are unable to discern whether the DMV's argument implies (1) some undisclosed legal principle bars an attorney fee award in the procedural posture presented by the Bonaudi matter or (2) it is factually impossible for DMV employees to engage in arbitrary or capricious conduct before a final administrative decision is rendered.

Perhaps the DMV's theory is based on Code of Civil Procedures section 1094.5, subdivision (a), which refers to a writ "issued for the purpose of inquiring into the validity of any *final* administrative order or decision." (Italics added; see *Kumar v. National Medical Enterprises, Inc.* (1990) 218 Cal.App.3d 1050, 1055 [writ of administrative mandamus may be issued to review an administrative decision only if it is final].) These principles regarding administrative mandamus do not apply to Bonaudi's challenge to the failure to rule on his request for a continuance, which is made in a petition for a writ of ordinary mandamus under Code of Civil Procedure section 1085. That section was relied upon in the opening brief Drivers filed in the superior court. That

brief referred to Code of Civil Procedure section 1085 as a way to address "the responses or *failures to respond by the DMV*."  (Italics added.)

On appeal, the DMV has failed to carry its burden of demonstrating reversible error because it has ignored the possibility that the superior court determined a writ of ordinary mandate was appropriate due to the DMV's failure to rule within a reasonable amount of time on a request for a continuance for which good cause was established as a matter of law.  (See *Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066 [appellant has burden to demonstrate reversible error with reasoned argument and citation to authority; point inadequately briefed is treated as forfeited]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [point treated as waived where it was not supported with reasoned argument and citations to authority].)

Similarly, the DMV has cited no authority and provided no reasoned argument for the implied contention that the surrounding circumstances are insufficient to infer bad faith.  (See *Gemini Aluminum Corp. v. Cal. Custom Shapes* (2002) 95 Cal.App.4th 1249, 1263 [bad faith involves a party's subjective state of mind and often is inferred from the circumstances] (*Gemini*); *Jones v. Goodman, supra,* 57 Cal.App.5th at p. 536 [subjective bad faith is a question of fact, reviewed only for substantial evidence].)  Those circumstances include, but are not limited to, the late delivery of discovery and the failure to rule on the requested continuance.  Thus, the DMV has failed to demonstrate that there is insufficient evidence to support an implied finding of bad faith conduct, which is a type of arbitrary or capricious behavior.  (See *Halaco*, *supra*, 42 Cal.3d at p. 79.)  Consequently, the award of attorney fees under section 800 in the Bonaudi matter will be affirmed.

21.

IV.   FEBRUARY 14, 2019 HEARINGS

    A.   Background

        1.   *Requests for Continuances*

APS hearings for seven Drivers—Shelton, Banchieri, Gunter, Holdren, Castagnoli, Tegowski, and Peralta—were set for February 14, 2019. Castagnoli's administrative proceeding was the oldest, as he had been granted many continuances after his November 2013 arrest. Holdren was arrested in November 2014 and also had been granted many continuances. Of the other Drivers, one was arrested in 2016, and four were arrested in 2018.

Many of Attorney Middlebrook's letters requesting continuances of the APS hearings for these Drivers included assertions made in the January 22, 2019 letter submitted in Bonaudi's case, which is quoted at length above. For example, an October 11, 2017 letter in Holdren's case (1) described how the Kern County Superior Court scheduled criminal cases for trial, how 10-day time waivers worked, and how cases were trailed for trial; (2) stated Middlebrook's office and the DMV had understood how the court operated and had worked diligently to have the administrative cases heard timely, which included scheduling APS hearings knowing that trials were also scheduled and the DMV (a) holding the APS hearing if the case was trailed or (b) *always* granting a continuance if a court case was sent to trial; (3) asserted that after Manager Christopher Pitchford was hired, there was a stark change in the policy for continuances without any notice of the change to attorneys in Kern County; and (4) asserted delays and the backlog were caused by the DMV's inadequate staffing and the unavailability of hearing dates and times that took into account the court appearances attorneys were required to make. In particular, the letter asserted delays were caused by the DMV "leaving Mr. Raul Boone as the only permanent Hearing Officer assigned to Kern County for years."

On January 23, 2019, at 5:02 p.m., Attorney Middlebrook faxed a letter to Hearing Officer Lisa Witt requesting a continuance of Banchieri's APS hearing scheduled for

January 25, 2019.[2] The letter acknowledged the previous continuance based on the Bravo matter, stated the Bravo matter had been continued unexpectedly based on the prosecution's untimely delivery of expert opinions, and stated Attorney Middlebrook would be in Chatsworth on the 25th for a trial in Barre McKee's case.

The next day—January 24, 2019—Attorney Middlebrook appeared before Hearing Officer Witt to provide an explanation of the request to continue Banchieri's APS hearing and another APS hearing, both of which were scheduled for January 25, 2019. During that proceeding, Hearing Officer Witt stated she had not yet received the request faxed the previous day. Attorney Middlebrook described how the Bravo matter had been continued, how the Orozco matter had been settled, and the scheduling of the trial in McKee's case for the next day. Hearing Officer Witt granted the continuances and Banchieri's APS hearing was rescheduled for 10:15 a.m. on February 14, 2019.

On January 25, 2019, at approximately 3:00 p.m., Attorney Middlebrook faxed letters to Hearing Officer Boone requesting continuances of six APS hearing scheduled for February 14, 2019. The letters stated Attorney Middlebrook would be in trial in Kern County Superior Court for the cases of Apolinar Nunez and Ricardo Bugarin; the trials and jury selection were set to begin on February 11, 2019; the trials were set to run consecutively for an estimated 15 days; and, as a result, he would be unavailable from February 11, 2019 through March 1, 2019. On January 31, 2019, Attorney Middlebrook's office sent a similar letter to Hearing Officer Witt requesting a continuance of Banchieri's APS hearing scheduled for February 14, 2019.

Before the hearing officers ruled on the foregoing requests to continue the APS hearing scheduled for February 14, 2019, Attorney Middlebrook filed petitions for writ of

---

[2]    That hearing had been scheduled for January 10, 2019, but on January 2, 2019, Attorney Middlebrook sent Hearing Officer Witt a letter requesting a continuance because of a conflict with the trial in the Bravo matter. On January 7, 2019, Hearing Officer Witt faxed a letter granting the continuance.

mandate on behalf of Gabriella Cisneros and four other drivers whose requests to continue their APS hearings had been denied by the DMV. Their writ petitions were filed on February 4, 2019.

On February 8, 2019, Hearing Officer Boone sent Attorney Middlebrook six form DS 2227's referring to the continuance requests asserting conflicts with appearance required in the Nunez and Bugarin criminal cases. The forms stated: "Your request for continuance is tentatively approved, providing the court case cited goes forward. If the court case does not go forward, you will be expected to appear for the hearing scheduled for February 14, 2019 .… A follow up response will be submitted prior to the hearing."

On February 8, 2019, at 3:48 p.m., Attorney Middlebrook's office faxed a letter to the attention of Hearing Officers Witt and Boone requesting continuances of APS hearings scheduled from February 11, 2019, through February 22, 2019. The letter referred to previous requests, stated the DMV had not responded to the requests in a timely manner, and listed 55 court appearances scheduled for those dates, except for the 12th and 18th, which were holidays. These court appearances, except for the trials in Nunez and Bugarin, were raised for the first time.

On February 11, 2019, at 3:37 p.m., Hearing Officer Boone faxed Attorney Middlebrook's office a form DS 2227 that responded to the February 8, 2019 letter:

> "Request for continuance(s) is denied. Please submit a continuance request for each APS hearing case individually. Please note many of the listed cases in your continuance request is due to a court appearance that have already been continued by the court. A few of the others that may be pending will be reviewed based on your individual request for continuance. Please note counsel is expected to appear for his scheduled hearing unless otherwise notified of an approved continuance."

The afternoon of February 12, 2019 (Lincoln's Birthday and a court holiday), Attorney Middlebrook responded to the direction for requests in each case individually by faxing Hearing Officer Boone separate letters in the Shelton, Gunter, Holdren, Castagnoli, Tegowski, and Peralta APS proceedings. The letters set forth eight court

24.

appearances he had scheduled for February 14, 2019, which included the Nunez trial, six pretrial hearings that morning in Mojave, and a status conference that afternoon in Ridgecrest. Attorney Middlebrook asserted his prior letter of February 8, 2019, contained his court schedule for the 13th through 22nd of February and was "meant to elaborate on the other hearings that would make moving forward over the same two-week period of time impossible regardless if any individual trial proceeds." The letters also stated: "We have never in 25-years been forced to submit day-to-day requests. This is another new tactic by you and the [DMV] to harass, coerce and threaten individual attorneys and seek to intentionally harm our clients." The letters asserted "that you are now acting in complete contravention of the law and with utter disregard for your own policies and procedures" and that "it is done with malice and intent to cost myself and/or our clients tens of thousands of dollars in appellate costs." The letters stated the conduct was arbitrary and capricious. These statements, with the references to malice and intent, effectively present the theory that the conduct of the DMV qualified as subjective bad faith.

On February 13, 2019, Hearing Officer Boone sent Attorney Middlebrook forms DS 2029 denying the requests for a continuance and stating he expected Attorney Middlebrook to appear at the hearings scheduled for February 14, 2019. The forms stated that "the trial regarding People vs A. Nunez, Case #BM911409A did not go forth as stated on your Request for Continuance letter, dated 1/25/19, and your request for continuance, dated 2/12/19, is not timely." Attorney Middlebrook's office received the faxed forms at approximately 6:02 p.m. that day.

In addition, at 5:57 p.m. on February 13, 2019, Attorney Middlebrook's office received a faxed form DS 2029 signed by Hearing Officer Witt denying the request to continue Banchieri's APS hearing. The time and date of the fax are established by the transmission verification report included in the DMV's appellant's appendix and stamped page "AA0264." The form stated: "The trial regarding People v Nunez is not going

25.

forward tomorrow as stated in your Request for Continuance dated January 31, 2019, your request for continuance dated February 12, 2019 is not timely, therefore I will expect you to appear for the scheduled hearing at 10:15 [A]M on February 14, 2019."**3** (Italics added.)

On February 14, 2019, at 9:30 a.m., Attorney Middlebrook faxed seven letters to the DMV acknowledging receipt of the denials faxed the previous evening, stating the hearing officers were aware that the trial was trailing and that he had other court appearances in Mojave and Ridgecrest, and listing six pretrial hearing that morning in Mojave and three appearances that afternoon in Ridgecrest. The letters asserted the DMV had been notified three separate times that Attorney Middlebrook was not available for APS hearings that day due to scheduled court appearances and that he could not choose to appear in DMV proceedings instead of court proceedings because missing a court-ordered appearance would result the court issuing arrest warrants for his defendant-clients.

### 2. APS Hearings and Decisions

The DMV went forward with the seven APS hearings scheduled for February 14, 2019. After the hearings, the hearing officer issued a notification of findings and decision in each case (1) stating neither the Driver nor the Driver's representative had appeared for the hearing and no evidence was presented on the Driver's behalf, (2) describing the requests for continuances and denials, (3) finding the three criteria for upholding the

---

**3** The form was incorrectly dated February 7, 2019. The error is obvious for a couple of reasons, including its reference to a continuance request dated February 12, 2019—five days in the future. Despite this clumsy attempt at backdating, the DMV's opening brief signed by Deputy Attorney General Brad Parr and its reply brief signed by Supervising Deputy Attorney General Gary S. Balekjian misrepresent the timing of the denial by stating: "The DMV denied [Banchieri's] request on February 7, 2019, because it determined that the *People v. Nunez* matter would not be going forward after reviewing the court docket for that case. [AA 263]." (See Bus. & Prof. Code, § 6068, subd. (d) [duty of attorney]; Cal. Rules Prof. Conduct, rule 3.3, subd. (a)(1) [duty of candor].)

suspension order had been proven by the DMV's evidence, and (4) reimposing the administrative order suspending the Driver's license. Five of the notifications of findings and decision included a certificate of service signed by Hearing Officer Boone stating the document had been mailed to Attorney Middlebrook's office on February 14, 2019. The notification of findings and decision in Holdren's case included a certificate of service signed by Hearing Officer Boone stating it had been mailed to Holdren's address on February 14, 2019. A certificate of service signed by Hearing Officer Witt stated the notification of findings and decision in Banchieri's case was mailed to Attorney Middlebrook's office on February 21, 2019.

### 3. Writ Petitions

On Monday, March 4, 2019, the seven Drivers filed petitions for writ of mandate alleging they had not received a response to their February 14, 2019 requests for a continuance. Five of the Drivers alleged they received the findings and decision in their case on February 19, 2019. Shelton alleged he had not received a decision and findings. Banchieri alleged she became aware of the decision and findings on February 25, 2019, when she uploaded it from the DMV's case management system.

### 4. Superior Court's Decision

The trial on the writ petitions was held in December 2019 and the superior court issued a tentative decision in January 2020. After receipt and consideration of the final round of briefing, the court issued its ruling in February 2020. The court granted the writ petitions of 16 Drivers whose APS hearings were scheduled on February 14, 15, 21 and 22, 2019, commanded the DMV to conduct new hearings, and awarded attorney fees under section 800. The court's reasons for awarding attorney fees was the same for each of the four groups:

> "Petitioners' requests for continuances in these cases were sufficiently timely and supported by good cause. On Feb. 8, the DMV 'tentatively' approved the continuances, but conditioned the continuances on future

27.

court events that were largely outside the petitioners' control. Petitioners' attorney identified additional conflicts. The petitioners' requests could have been more complete. The number of prior continuances and ages of the cases might have justified denying further continuances without a more detailed showing to establish good cause. However, the DMV's 'tentative' approvals of continuances created ambiguity. The hearing officer should have granted or denied the continuance based on 'the facts and circumstances of the case[s] as they exist[ed] at the time of the determination.' *Bussard v. Dept. of Motor Vehicles* (2008) 164 Cal.App.4th 858, 864. 'Tentatively' granting continuances *invited* the petitioners to provide additional information regarding the scheduling conflicts. When that information was provided, the DMV requested a different format. When the petitioners complied, the DMV treated the new correspondence as entirely new requests, and deemed them untimely. Proceeding with hearings after 'tentatively' approving continuances, under the circumstances of these cases, was arbitrary, capricious, and an abuse of discretion."

The June 4, 2020 judgment in the consolidated cases stated the amount of the attorney fees would be determined upon the filing of an appropriate motion.

B.      The DMV's Claims of Reversible Error

The DMV contends the awards of attorney fees to the Drivers whose APS hearings were scheduled for February 2019 were not appropriate because the denials of the continuance requests were not arbitrary or capricious. The DMV argues its "actions in denying the Drivers belated requests for continuances were in good faith, within its hearing officers' discretion, and supported by the language of Government Code section 11524." The DMV's contentions about good faith address the subjective state of mind of its employees.

The DMV's reply brief addresses the issue of its employees' subjective state of mind from the opposite perspective by asserting the hearing officer decisions denying continuances do not show *bad faith*, arbitrary or capricious conduct. On the matter of evidence—whether favorable or unfavorable and whether direct or circumstantial—the reply brief makes the sweeping claim that "[t]here was no evidence showing that the DMV acted in bad faith."

28.

C.      Bad Faith:  The Implied Finding and Demonstrating Error

Bad faith conduct is a type of arbitrary or capricious behavior.  (See *Halaco, supra*, 42 Cal.3d at p. 79.)  The DMV's briefing does not attempt to define bad faith or set forth the rules of law defining how it is proven.  We undertake those basic steps next.

The phrases "good faith" and "bad faith" are commonly understood to refer to a subjective state of mind.  (*Ceja v. Rudolph & Sletten, Inc.* (2013) 56 Cal.4th 1113, 1120; *Gemini*, *supra*, 95 Cal.App.4th at p. 1263.)  Good faith ordinarily is " 'used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation.' "  (*Ceja*, *supra*, at p. 1120.)  Its opposite, bad faith, means " 'the action or tactic is being pursued for an improper motive,' " such as intending to cause unnecessary delay, or for the sole purpose of harassing the other side.  (*Gemini*, *supra*, at p. 1263.)  Bad faith also is defined as dishonesty of belief, purpose or motive.  (*Jones v. Goodman*, *supra*, 57 Cal.App.5th at p. 536.)  Often, a subjective state of mind is not susceptible to direct proof and, as a result, the trier of fact must infer that state of mind from circumstantial evidence.  (*Gemini*, *supra*, at p. 1263.)  Because subjective bad faith is a question of fact, a finding is reviewed under the substantial evidence standard.  (*Jones v. Goodman*, *supra*, at p. 535, fn. 14.)

This court is required by the applicable principles of appellate procedure to infer the superior court impliedly found the hearing officers acted in bad faith.  That implied finding is reviewed for substantial evidence.  (See *SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 462 [substantial evidence standard applies to both express and implied findings].)  In the procedural context of this appeal, the DMV, as appellant, has the burden of demonstrating the implied finding is not supported by substantial evidence.  (See *Denham*, *supra*, 2 Cal.3d at p. 564 [appellant's burden to establish reversible error].)

One procedural requirement applied to appellants who seek to carry the burden of demonstrating the evidence is insufficient to support a finding of fact is that the appellant's brief must summarize the evidence on that point, favor and unfavorable, and show how and why it is insufficient. (*Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218; *Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738.) In this appeal, the DMV has represented that there is "no evidence showing that the DMV acted in bad faith." As a result, the DMV has not complied with applicable law because it has failed to summarize the unfavorable circumstantial evidence and failed to show how and why it is insufficient. An appellant's failure to comply with these fundamental requirements of appellate procedure has been deemed to waive the argument that the evidence is insufficient. (E.g., *Doe*, *supra*, at p. 218.) Here, we do not state our conclusion in terms of waiver or forfeiture, but describe the DMV's failure to summarize the evidence and show how and why it is insufficient as failure to carry its burden of demonstrating the implied finding of bad faith constitutes reversible error.

An example of the DMV's failure to describe unfavorable evidence is the lack of an acknowledgement that the form DS 2029 denying the request to continue Banchieri's APS hearing was backdated to February 7, 2019. Viewing the evidence in the light most favorable to the superior court's judgment, we must infer the superior court found the backdating was done intentionally, which supports the further implied finding that the act was done for an improper purpose and, therefore, constitutes bad faith conduct. The misrepresentations in the DMV's appellate briefing that the denial did, in fact, occur on February 7, 2019, serves to highlight the DMV's failure to acknowledge and summarize the unfavorable evidence.

D.    Interpretation of the Hearing Officers' Denials

We separately address the DMV's contention that the superior court mischaracterized its responses to the continuance requests.  In making this contention, the DMV does not refer to any rules of law governing how to characterize or interpret its decisions denying the continuance requests.  Consequently, we summarize those rules here.

We conclude the hearing officer decisions denying the continuances, like a court order or judgment, are interpreted using the same rules that apply to written documents generally.  (See *Mendly v. County of Los Angeles* (1994) 23 Cal.App.4th 1193, 1205 [rules for ascertaining the meaning of a stipulated judgment]; *Verner v. Verner* (1978) 77 Cal.App.3d 718, 724 [interpretation of interlocutory judgment].)  Under the general rules for interpreting written documents, the threshold question is whether the language used in the document is ambiguous.  (E.g., *Joseph v. City of Atwater* (2022) 74 Cal.App.5th 974, 982 [the existence of ambiguity is the threshold question in contract interpretation]; *Cavey v. Tualla* (2021) 69 Cal.App.5th 310, 336 [same for statutory interpretation].)  Language in a written document is ambiguous if it is susceptible to more than one reasonable interpretation.  (*Cavey*, *supra*, at p. 336.)  An ambiguity may be patent—that is, arising from the face of the document—or latent—that is, demonstrated by extrinsic evidence.  (*Davis Boat Manufacturing-Nordic, Inc. v. Smith* (2023) 95 Cal.App.5th 660, 673.)  This reference to extrinsic evidence reflects the principle that language is not construed in isolation, but in the context in which the document was made.  (See *Starlight Ridge South Homeowners Assn. v. Hunter-Bloor* (2009) 177 Cal.App.4th 440, 447 [contract construed as a whole and in context, not in isolation].)  Whether a document's language is ambiguous is a legal question subject to independent review.  (*Joseph*, *supra*, at p. 982.)

Here, the superior court concluded the February 8, 2019 tentative approvals of the continuance requests created ambiguity.  Extrinsic evidence establishing the context for

31.

the tentative approvals includes the prior requests for continuances, the rulings on the earlier requests, the DMV's past practices in handling such requests, and the fact the DMV was changing its approach to continuances and how it interpreted and applied the timing and good cause requirements of section 11524. The DMV's change in approach is illustrated by the approval of the requests to continue Banchieri's January 25, 2019 APS hearing, which were made by a faxed letter dated January 23, 2019 and orally in a January 24, 2019 appearance before Hearing Officer Witt. Later requests made a day or two before the APS hearing were denied as untimely.

The DMV's reply brief argues (1) this court should not consider matters outside the administrative record, (2) references to the long history of how Attorney Middlebrook and the DMV dealt with continuances in the past is irrelevant because the DMV followed the law, and (3) a ruling on a continuance is a matter within the discretion of the hearing officer. First, it is well established that, "absent justification for failing to present an argument earlier, we will not consider an issue raised for the first time in a reply brief." (*Save the Sunset Strip Coalition v. City of West Hollywood* (2001) 87 Cal.App.4th 1172, 1181, fn. 3; see *Herrera v. Doctors Medical Center of Modesto* (2021) 67 Cal.App.5th 538, 548 [" 'It is elementary that points raised for the first time in a reply brief are not considered by the court' "].)

Second, the DMV's argument that matters outside the administrative record are inadmissible is premised on the petitions seeking writs of administrative mandamus under Code of Civil Procedure section 1094.5. Yet, the DMV has not demonstrated (by citation to authority with reasoned argument) that the denial of a continuance is a final administrative decision subject to review under that statute rather than subject to review under the ordinary mandamus provision in Code of Civil Procedure section 1085. Ordinary mandamus is used to review adjudicatory decisions when the agency was not required to hold an evidentiary hearing. (*American Board of Cosmetic Surgery v. Medical Board of California* (2008) 162 Cal.App.4th 534, 547; see Johnson & Taylor,

*California Driving Under the Influence Defense* (Thomson Reuters 5th ed. 2023) § 4:20 [judicial review under the two types of mandamus].)

Third, the DMV's argument that the extrinsic evidence is irrelevant is wrong. Under the rules for interpreting written documents, extrinsic evidence is relevant to whether an ambiguity exists and, thus, is admissible. (See *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165.) Here, the extrinsic evidence includes various letter requests for continuances presented by Attorney Middlebrook, such as the October 11, 2017 letter submitted to the DMV in Holdren's APS proceeding and described above. The letters constitute substantial evidence supporting an implied finding that the DMV changed how it applied the timing and good cause requirements of section 11524. The changes are part of the context relevant to determining whether the February 8, 2019 tentative approvals and subsequent directions were ambiguous.

With this context and the other surrounding circumstances in mind, we conclude the DMV's tentative approvals of the January 25 and 31, 2019 continuance requests were ambiguous. In particular, they did not unambiguously communicate that the good cause requirement would be satisfied only if the trials listed in the continuance requests went forward and, alternatively and in contrast to past practice, good cause could not be satisfied by other court appearances that became required in the event the trials did not go forward. Stated another way, the decisions did not unambiguously state that DMV was altering its past practice. Also, the decisions are ambiguous on whether the Drivers were not being invited to provide information about court appearances that would be required if the trials did not begin.

Another aspect of the DMV's handling of the continuance requests was the directive that requests for continuance be submitted separately for each APS hearing followed by its denial of the individual requests as untimely. It was reasonable for the superior court to infer that these two steps were a ploy undertaken for the purpose of clearing backlog. Neither the denials nor the arguments presented to the superior court

by the DMV referred to any statute, regulation, manual, or policy to support the action of requiring separate requests. The superior court could have impliedly found that Attorney Middlebrook was credible when his letters asserted it was a new requirement and that the requirement was imposed for an improper purpose.

To summarize, the DMV has not demonstrated the superior court erred in interpreting the decisions denying the continuance requests or in making implied findings of bad faith conduct. We need not separately address the fee awards to Drivers whose hearings were scheduled for February 15, 21 and 22, 2019 because (1) the superior court used the same rationale for awarding fees to those Drivers as the Drivers whose APS hearings were scheduled for February 14, 2019 and (2) the DMV's briefing stated "[t]he same general circumstances surround the requests for continuances and thus the DMV addresses them together." Consequently, the attorney fee awards under section 800 will be affirmed, except for the award to Atkinson.

E.     Atkinson's Writ Petition Was Improvidently Filed

The DMV contends attorney fees were not warranted in the Atkinson matter because the suspension of his license was set aside and, therefore, his writ petition was unnecessary. The DMV raised this defense in its answer to Atkinson's petition. The record presented supports this defense. It contains Hearing Officer Boone's February 19, 2019 findings and decision stating that when Atkinson was detained, he was not informed that his driving privilege would be suspended or revoked if he refused to complete the required testing and, because of this procedural defect, the administrative suspension of his license could not be upheld.

The Drivers' respondent's brief acknowledges the DMV set aside the suspension Atkinson's license and concedes Atkinson's writ petition "was improvidently filed on March 4, 2019, and the trial [court] erred in granting his writ." The record adequately

34.

supports this concession and, therefore, we conclude the award of attorney fees to Atkinson must be reversed.

## V. ATTORNEY FEES ON APPEAL

The Drivers contend they are entitled to additional attorney fees incurred in this appeal to defend the original award. They concede that the total permissible award per Driver cannot exceed the maximum authorized by section 800, which is $7,500. (See *Reeves v. City of Burbank* (1979) 94 Cal.App.3d 770, 780 [section 800's limit on the amount of attorney fees recoverable applies to one civil action, which includes any appeal].) The Drivers ask this court to conclude they are entitled to attorney fees on appeal and remand the determination of the amount to the superior court.

In *Serrano v. Unruh* (1982) 32 Cal.3d 621, the court stated that "it is established that fees, if recoverable at all—pursuant either to statute or parties' agreement—are available for services at trial and on appeal." (*Id*. at p. 637.) Furthermore, "[c]ourts routinely have awarded fees on appeals vindicating only the right to an award for trial services." (*Ibid*.) We conclude these principles apply to an award of attorney fees under section 800. The DMV's argument that fees under section 800 are not recoverable on appeal does not take into account the routine practice described by our Supreme Court in *Serrano*. Furthermore, the DMV's reliance on *Sullivan v. Calistoga Joint Unified School Dist.* (1991) 228 Cal.App.3d 1313 is misplaced. *Sullivan*'s procedural history is distinguishable from this case because there was no award of attorney fees in the superior court. (*Id*. at p. 1319.) Thus, the appeal in *Sullivan* did not vindicate "the right to an award for trial services." (*Serrano*, at p. 637.) In contrast, 16 of the Drivers in this appeal vindicated their right to an award of fees for services provided in the superior court proceedings.

Consequently, we conclude the Drivers are entitled to the attorney fees incurred in this appeal, subject to the statutory limit. On remand, the superior court shall determine

35.

the appropriate amount of such fees.  (See *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1610 [better practice is to remand].)

## DISPOSITION

The judgment is reversed in part and affirmed in part.

The judgment's award of attorney fees to Broderick Atkinson, case No. BCV-19-100553, is reversed.

The judgment's award of attorney fees to the 16 other respondent Drivers is affirmed.  Those Drivers are awarded their costs and attorney fees on appeal.  (Cal. Rules of Court, 8.278(a)(1), (d)(2).)  On remand, the superior court shall determine the amount of reasonable attorney fees incurred by those Drivers on appeal.


FRANSON, J.

I CONCUR:


DE SANTOS, J.

POOCHIGIAN, Acting P. J., Concurring.

The Department of Motor Vehicle's (DMV) Administrative Per Se (APS) hearing system for the suspension of a DUI defendant's driver's license is intended to safeguard several important societal interests. The APS system protects others on the highways by quickly suspending the licenses of individuals who drive with excessive blood-alcohol levels; it guards against an erroneous deprivation of the driving privilege by providing a prompt administrative review of a suspension; and it places no restrictions on the ability of a prosecutor to pursue related criminal actions. (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 847.)

Implementing this system and meeting these goals is not easy. There are thousands of challenges to license suspensions and APS hearings that occur each year. Of necessity, this requires the DMV to deal with the schedules of attorneys who represent suspended drivers. In this case, the drivers are represented by a counsel who is well known in this specialized area of the law. Counsel maintains a robust practice representing criminal defendants and suspended drivers. For example, as pointed out by the DMV, for the period from February 11 to February 22, 2019, alone, counsel sought continuances for 35 different drivers based on a total 55 different criminal court conflicts.

It is easy to understand the frustration caused by scheduling conflicts and continuance requests. Counsel cannot be at two places at once and must appear in criminal court for his clients. On the other hand, the DMV must deal with the steady stream of suspension challenges. This means that DMV personnel are tasked not only with safeguarding against wrongful suspensions and protecting other drivers on the highways, but also with timely processing and holding APS hearings on each challenged suspension. While there are most certainly other considerations that can and do delay the APS system, numerous requests for

continuances, particularly from a counsel who represents a large volume of suspended drivers, could have a negative impact on the DMV's ability to effectively and efficiently hold APS hearings.

I acknowledge the operational (and presumably fiscal) difficulties facing the DMV.  Nevertheless, the analysis of this order properly reflects the standards of review applicable to this appeal, as well as the conclusions that we must necessarily draw from the lower court's findings, both implied and express.  Those standards and conclusions result in the affirmance of the trial court's award of attorney fees to the drivers and against the DMV.


POOCHIGIAN, Acting P. J.

Filed 6/21/24

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| BRODERICK ATKINSON,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DEPARTMENT OF MOTOR VEHICLES et al.,<br><br>    Defendants and Appellants.<br><br>[And 16 other cases.*] | F081372<br><br>(Super. Ct. No. BCV19-100294)<br><br>**ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PARTIAL PUBLICATION**<br>**[No Change in Judgment]** |

It appearing that part of the nonpublished opinion filed in the above entitled matter on May 31, 2024, meets the standards for publication specified in California Rules of Court, rule 8.1105(c), IT IS ORDERED that the opinion be certified for publication in the

---

\*        *Shelton v. Department of Motor Vehicles* (No. BCV-19-100554); *Bianchieri v. Department of Motor Vehicles* (No. BCV-19-100555); *Arroyo v. Department of Motor Vehicles* (No. BCV-19-100559); *Lara v. Department of Motor Vehicles* (No. BCV-19-100561); *Gunter v. Department of Motor Vehicles* (No. BCV-19-100564); *Zermeno v. Department of Motor Vehicles* (No. BCV-19-100565); *Marquez v. Department of Motor Vehicles* (No. BCV-19-100567); *Holdren v. Department of Motor Vehicles* (No. BCV-19-100568); *Castagnoli v. Department of Motor Vehicles* (No. BCV-19-100569); *Rascon v. Department of Motor Vehicles* (No. BCV-19-100570); *Paulsen v. Department of Motor Vehicles* (No. BCV-19-100571); *Tegowski v. Department of Motor Vehicles* (No. BCV-19-100573); *Peralta v. Department of Motor Vehicles* (No. BCV-19-100574); *Bonaudi v. Department of Motor Vehicles* (No. BCV-19-100575); *Tamayo v. Department of Motor Vehicles* (No. BCV-19-100715); *Hallock v. Department of Motor Vehicles* (No. BCV-19-100716).

Official Reports with the exception of Facts and Proceedings, parts I., II., III. and IV. of the Discussion, and the concurrence.

Additionally, IT IS ORDERED that the majority opinion filed herein on May 31, 2024, be modified as follows:

1. On page 2, the second full sentence of the second paragraph is deleted and replaced with the following sentence:

> In the unpublished portion of this opinion addressing the second stage of this appeal, we conclude the DMV has failed to demonstrate reversible error.

2. On page 3, the last sentence of the partial paragraph at the top of the page is deleted and replaced with the following sentence:

> The circumstantial evidence relevant to the hearing officers' state of mind, although not conclusive, constitutes substantial evidence supporting the implied findings.

3. On page 3, before the paragraph that begins "We therefore affirm …", insert the following new paragraph:

> In the published part of this opinion, we conclude that each driver is entitled to recover reasonable attorney fees incurred in this appeal defending the superior court's award of attorney fees under section 800, subject to the statutory cap that limits the total amount recoverable to $7,500. For purposes of section 800, subdivision (a), this appeal is part of the "civil action" in which the fees were incurred.

4. On page 35, delete section V. in its entirety and insert the following new section V.:

> "V. ATTORNEY FEES ON APPEAL
>
> In the unpublished parts of this opinion, we accepted Broderick Atkinson's concession that he was not entitled to a favorable judgment or an award of attorney fees because the DMV had set aside the suspension of his driver's license. We also determined the DMV failed to demonstrate the awards of section 800 attorney fees to the 16 other Drivers were the result

2

of reversible error.  Here, we address whether the 16 respondent Drivers are entitled to recover the attorney fees they incurred in this appeal.  We publish this portion of the opinion because the parties have not cited, and we have not located, a decision involving section 800 that is directly on point.

The Drivers cite the general principle that "statutes authorizing attorney fee awards in lower tribunals include attorney fees incurred on appeals of decisions from those lower tribunals" (*Morcos v. Board of Retirement* (1990) 51 Cal.3d 924, 927) to justify the recovery of the attorney fees they incurred in this appeal defending the original fee awards.  In response, the DMV argues the Drivers are not entitled to an additional recovery because (1) the DMV presented good faith legal arguments on appeal and, thus, the arbitrary or capricious standard for awarding fees under section 800 has not been satisfied on appeal, (2) section 800 applies only to proceedings in the superior court involving review of a final administrative decision, not to an appeal from a superior court judgment, and (3) if fees incurred on appeal are recoverable, the total fees awarded cannot exceed the $7,500 statutory limit.

A.     Application of Statutory Cap

Section 800, subdivision (a) refers to "any civil action to appeal or review the award, finding, or other determination of any administrative proceeding" and authorizes an award of reasonable attorney fees where the administrative "proceeding was the result of arbitrary or capricious action or conduct by a public entity or an officer thereof[.]"  The statutory cap limits the recovery to "reasonable attorney's fees, computed at one hundred dollars ($100) per hour, but not to exceed seven thousand five hundred dollars ($7,500)[.]"  (§ 800, subd. (a).)  The Drivers concede the total permissible award per Driver cannot exceed the maximum of $7,500 authorized by section 800.  Based on our independent review of the statutory text and *Reeves v. City of Burbank* (1979) 94 Cal.App.3d 770 (*Reeves*), we agree with the concession.

In *Reeves*, the superior court declared a city ordinance unconstitutional, entered judgment in favor of the plaintiff, and awarded the plaintiff the full amount of attorney fees authorized by section 800 at that time—$1,500.  (*Reeves*, *supra*, 94 Cal.App.3d at p. 773.)  The city appealed only the portion of the judgment awarding attorney fees under section 800, arguing its conduct was not arbitrary or capricious.  (*Id*. at p. 774.)  After upholding the fee award, the appellate court considered the plaintiff's

3

request for additional attorney fees incurred in defending the fee award on appeal. (*Id.* at p. 780.) The court construed the statute to limit the recovery of attorney fees in any one civil action and concluded the appeal was a part of the civil action. (*Ibid*.) Thus, the court concluded the total amount recoverable was $1,500 and any expansion of section 800 awards was a matter for the Legislature. (*Ibid*.) We agree with this statutory construction. The term "any civil action" used in section 800, subdivision (a) encompasses the proceedings in both the superior court and the appellate court. (See Code Civ. Proc., §§ 30 [definition of a civil action], 904 ["appeal may be taken in a civil action or proceeding as provided in Section 904.1, 904.2, 904.3, and 904.5"].) Consequently, the total amount awarded to a Driver for attorney fees incurred in the superior court and in this appeal cannot exceed the statutory cap of $7,500.

In *Reeves*, the court did not state whether it was assuming that attorney fees incurred on appeal in defending a section 800 attorney fee award were recoverable or actually deciding that issue. The decision in *Reeves* not to award additional attorney fees based on the statutory cap does not necessarily mean no other grounds existed for rejecting the request for additional fees. Consequently, we proceed to the other grounds raised by the DMV.

B.      Appeals from Judgments on a Petition for Writ of Mandate

The DMV argues that section 800 fees are recoverable only for a petition for writ of mandate in the superior court seeking judicial review pursuant to Code of Civil Procedure section 1094.5 directly following an administrative hearing. The DMV relies on cases concluding section 800 does not apply to an appeal from a superior court judgment denying a petition for writ of mandate.

In *Sullivan v. Calistoga Joint Unified School Dist.* (1991) 228 Cal.App.3d 1313, a teacher filed a petition for writ of mandate to compel the school district to reclassify her as a permanent part-time teacher, instead of a categorically funded employee. (*Id*. at p. 1315.) The superior court denied her petition and she appealed. (*Ibid*.) The appellate court concluded the statutory requirements for classifying the teacher as a categorically funded employee had not been satisfied, reversed the denial of her writ petition, and remanded for consideration of other issues relating to her employment status. (*Id*. at p. 1319.) The appellate court also addressed the teacher's contention that she was entitled to attorney fees under section 800 because the school district arbitrarily denied her classification as a

4

permanent part-time employee.  (*Ibid*.)  The court rejected the contention, stating:

> "Appellant is not entitled to such fees, because Government Code section 800 applies only to cases involving appeals from a finding or award or other determination of an administrative proceeding.  [Citations.]  Because the appeal in the instant case is from a judgment of the superior court denying appellant's petition for peremptory writ of mandate, Government Code section 800 does not apply."  (*Ibid*.)

We conclude *Sullivan* and other cases involving a superior court's denial of a petition for writ of mandate are distinguishable from this case because those cases did not involve a superior court *granting* a writ petition and *awarding* attorney fees pursuant to section 800.  Applying the statutory text to this distinction, appeals from a denial of a writ petition do not involve a "civil action to appeal or review" a determination of an administrative proceeding where it has been "shown that the award, finding, or other determination of the [administrative] proceeding was the result of arbitrary or capricious conduct by a public entity or an officer thereof[.]"  (§ 800, subd. (a).)  Even though, as discussed earlier, an appeal to the Court of Appeal is part of a "civil action" as that term is used in section 800, subdivision (a), when the appeal is from a denial of a writ petition, the other requirements of section 800 have not been satisfied.  Specifically, there has been no showing the administrative determination was the result of arbitrary or capricious conduct.  In contrast, where the appeal challenges the grant of a writ petition and an award of attorney fees (or just the award of attorney fees) and the public entity loses the appeal, that appeal is part of a "civil action" where the requirements of section 800 have been satisfied.  As a result, the attorney fees incurred by the successful respondent in such an appeal fall within the scope of section 800, subdivision (a).

The foregoing statutory interpretation is consistent with our Supreme Court's conclusion that "it is established that fees, if recoverable at all— pursuant either to statute or parties' agreement—are available for services at trial and on appeal" (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 637) and its statement that "[c]ourts routinely have awarded fees on appeals vindicating only the right to an award for trial services."  (*Ibid*.)  Because these principles about the award of attorney fees incurred on appeal are compatible with section 800's text, we conclude they apply to awards of attorney fees under that statute.  Thus, a person who successfully defends a

5

section 800 award of attorney fees against a public entity's appeal is entitled to recover attorney fees incurred in the appeal, subject to the statutory cap.

Next, we consider the DMV's contention that an award under section 800 for additional attorney fees incurred on appeal are not appropriate because it made good faith legal arguments on appeal. This contention contradicts both the principles set forth in *Serrano v. Unruh*, *supra*, 32 Cal.3d 621 about the recovery of attorney fees incurred in an appeal and the text of section 800. From a textual perspective, an attorney fees award under section 800 is based on a showing "that the award, finding, or other determination of the [administrative] proceeding was the result of arbitrary or capricious action or conduct by a public entity or an officer thereof[.]" (§ 800, subd. (a).) It is not based on arbitrary or capricious conduct in the subsequent lawsuit challenging the administrative determination. As a result, good faith arguments in the judicial proceedings do not absolve a public entity from liability for attorney fees, whether those fees are incurred in the superior court proceeding or in an appeal vindicating "the right to an award for trial services." (*Serrano*, *supra*, at p. 637.)

To summarize, we conclude the Drivers are entitled to the attorney fees incurred in this appeal, subject to the statutory limit. On remand, the superior court shall determine the appropriate amount of such fees. (See *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1610 [better practice is to remand].)

There is no change in the judgment.

FRANSON, J.

WE CONCUR:

POOCHIGIAN, Acting P. J.

DE SANTOS, J.

6